629 So.2d 206 (1993)
Philip J. CHILLEMI and Cynthia K. Chillemi, Appellants,
v.
Mark E. RORABECK and Janet Dee Rorabeck, Appellees.
No. 92-3493.
District Court of Appeal of Florida, Fourth District.
November 17, 1993.
Order Denying Rehearing and Clarification January 11, 1994.
*207 Philip J. Chillemi, pro se.
Basil S. Diamond, Wellington, for appellees.
PARIENTE, Judge.
Sellers appeal a final judgment of $314,782.02 entered after a summary judgment on liability and a hearing on damages. The lawsuit arose from fraudulent misrepresentations made in connection with buyers' purchase of appellants' home. Sellers warranted that the title was free and clear of all encumbrances, when in reality a lien clouded the title. We find no error in the entry of the summary judgment on liability, but reverse the award of compensatory damages in the amount of $282,400 as based on clearly erroneous methods of calculations and measurement of damages. It follows that we should also reverse the award of $18,240 in punitive damages and $13,260 in attorney's fees and remand the cause for a new trial on damages.
*208 The sale occurred in 1985. Sellers provided buyers with an affidavit stating that the property was free and clear of all encumbrances, in order "to induce National Attorney's Title Insurance Company to guarantee the title to said property." The deed contained a similar warranty of title. However, three years before the sale, sellers had opened a line of credit, using the home as collateral. Six years after the sale, in 1991, buyers applied for a mortgage to obtain funds to expand their business. They claimed that they were unable to obtain the loan because their property was encumbered by a lien which had been filed to secure the debt owed by sellers on their line of credit.
The second amended complaint contained counts for slander of title, fraud, breach of warranty and breach of contract.[1] Sellers filed pro se answers to each of the complaints; however, the answers were stricken without prejudice by court order after the filing of a motion to strike. Thereafter, a motion for summary judgment was filed and properly noticed. For a short time, sellers were represented by an attorney who filed a motion to dismiss a request for production, a motion to dismiss the summary judgment and a motion for continuance. All of these motions were denied. Neither sellers nor their attorneys ever filed an amended answer, attacked the second amended complaint or filed counter-affidavits to the summary judgment.
When fraud is alleged, ordinarily summary judgment is improper. Lewis v. Kranz, 599 So.2d 253 (Fla. 3d DCA 1992). However, in the present case, after the answers were stricken by court order, there was nothing in the record refuting the claims contained in the second amended complaint. Although a summary judgment should not be granted where there is a conflict reflected by the pleadings, Fontainebleau Hotel Corp. v. Southern Florida Hotel & Motel Assoc., 294 So.2d 390 (Fla. 3d DCA), cert. denied, 304 So.2d 132 (Fla. 1974), here there is an absence of any legal pleadings showing disputed facts. Where a defendant fails to provide an answer or responsive pleading, he waives defenses that could have been raised in those pleadings. J.A.B. Enterprises v. Gibbons, 596 So.2d 1247 (Fla. 4th DCA 1992).
While sellers could have contested the allegations of the second amended complaint, in effect they did not do so once their answer was stricken. If sellers made a tactical decision to file motions rather than an amended answer and affirmative defenses, the strategy missed its mark, with the result that the summary judgment on liability withstands appellate attack.
Turning next to the issue of damages, generally a person injured by the commission of a fraud is entitled to recover "damages for whatever loss he may have sustained from being led into a disadvantageous purchase by willful misstatements of the vendor." Williams v. McFadden, 23 Fla. 143, 149, 1 So. 618, 622 (1887); Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d DCA 1985). The amount recoverable depends largely on the nature of the transaction. Schryburt. See also DuPuis v. 79th St. Hotel, Inc., 231 So.2d 532 (Fla. 3d DCA), cert. denied, 238 So.2d 105 (Fla. 1970); 27 Fla.Jur.2d Fraud and Deceit § 58 (1981).
While buyers are entitled to be made whole by virtue of the cloud on their title, they are not entitled to be made more than whole. This compensatory damage award is apparently predicated on an accountant's calculations in an unverified letter, which erroneously measures damages from 1985 although the buyers did not learn of the lien on their property until 1991. The first compensatory damages judgment included a return on the use of money from 1985 until 1992 of $182,400. Buyers were also awarded an additional $100,000, presumably representing the amount of the lien. However, there was no evidence establishing the amount of the lien, as opposed to the amount of the line of credit. The record indicates that the amount of the lien may have only been $41,200, almost *209 $60,000 less than the $100,000 line of credit.
The letter submitted by the accountant concerning loss of use damages is pure speculation. See McCall v. Sherbill, 68 So.2d 362 (Fla. 1953). The accountant assumed that $100,000, the total amount of sellers' line of credit, would have been invested in the stock market between 1985 and 1991, yielding an annual average rate of return of 15.602%. This rate is based on the Standard and Poor's index, not upon any actual facts of buyers' own investment history. Nothing in the record suggests that funds tied up by the lien were to be used by the buyers to invest in the stock market, and certainly not before 1991.
The other part of the accountant's calculations begin in June, 1991, the actual date that buyers learned of the lien when they sought to borrow $50,000 to expand their recently established business. The accountant estimated that $50,000 invested in the business "may have" increased income by $27,590 between June, 1991 and December, 1992, an average annualized return of approximately 36%. The basis for the accountant's estimate of such astronomical profits is questionable, assumes that the loan would have been given "but for" the lien, and also assumes a no-interest, no-cost loan.
Whether the damages here arise from the fraud count or breach of warranty count, it is axiomatic that the amount of compensatory damages awarded must be based on actual damages resulting from the presence of the lien on the property. See Needle v. Lowenberg, 421 So.2d 678 (Fla. 4th DCA 1982), rev. denied, 427 So.2d 737 (Fla. 1983). The buyers' damages, if any, did not begin to run until 1991, when they first learned of the lien and allegedly were unable to obtain a mortgage because of it. If indeed a cloud on the title existed from 1985 through 1991, buyers were not deprived of any use of the property during this period. The lien on the property caused no harm to buyers or their home between 1985 and 1991.
In order to recover damages from 1991 until the date the lien was removed, the buyers must first demonstrate that they would not have been able to obtain a mortgage because of the existence of the lien. Buyers must also establish the lien amount. Obviously if the lien was only $41,200 and the desired mortgage was for $50,000, sellers might not be responsible for a failure to obtain a mortgage for any amount in excess of the lien.
Buyers are claiming loss of profits allegedly resulting from the presence of the lien. Their claimed loss of profits would require a three-step analysis: 1) but for the lien, buyers would have obtained a mortgage; 2) if the mortgage were obtained, the money would have been invested in buyers' fledgling business; 3) if the money were received and invested, profits would have been generated. Not only is this proposition replete with speculation, but buyers also do not cite any authority for awarding loss of profits allegedly caused by the loss of use of money under circumstances similar to this transaction. Generally, damages for being wrongfully deprived of the use of money is awarded in the form of prejudgment interest. See Zucker v. Sears Roebuck and Co., 589 So.2d 454 (Fla. 5th DCA 1991). If loss of use damages are considered on remand, the cost of obtaining and carrying the mortgage must necessarily be offset.
Actual damages may also include pecuniary losses caused by removing the cloud cast upon the title, either by litigation or by borrowing the money to pay off the lien. See Needle; Donald M. Paterson, Inc. v. Bonda, 425 So.2d 206 (Fla. 4th DCA 1983). However, sellers have indicated in their motion for rehearing after final judgment that they paid off the lien and obtained a satisfaction of mortgage. If payment and satisfaction are established, obviously the amount of the lien would not properly be included in the judgment. Any expenses of collateral litigation to remove the lien may also be eliminated.
If buyers prevail, they can recover attorney's fees connected with this litigation. See Needle. The trial court, however, should set forth the basis for the amount of attorney's fees awarded, including the number of hours and a reasonable hourly rate. See Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).
*210 It is appropriate to comment on sellers' argument that the trial court wrongly denied their request for telephone hearings. While it is true that litigants would have no right to a telephone hearing, sellers have apparently lived in Arizona since the sale of their home in 1985. In this age of telecommunications and increasing costs of litigation, trial courts should be sensitive to the problems of out-of-state litigants.
Since the amount of compensatory damages is being set aside, the better practice is for the punitive damages award also to be reconsidered at the same time. See Stevens Markets, Inc. v. Markantonatos, 189 So.2d 624 (Fla. 1966); DuPuis. Sellers are not entitled to a jury trial, having waived this right by their previous actions and their failure to timely demand a jury trial. Accordingly, this cause is affirmed as to liability and reversed and remanded as to damages.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
HERSEY and POLEN, JJ., concur.
BY ORDER OF THE COURT:
ORDERED that appellees' motion filed December 2, 1993, for rehearing is hereby denied; further,
ORDERED that appellants' motion filed December 6, 1993, to tax costs is hereby remanded to the trial court pursuant to Florida Rule of Appellate Procedure 9.400(a) for taxation of costs to prevailing party; further,
ORDERED that appellants' motion filed December 10, 1993, for clarification is hereby denied.
NOTES
[1] Although slander of title was pled, clearly no cause of action exists as this case does not involve an instance where a lien was wrongfully filed with malice. See generally Donald M. Paterson, Inc. v. Bonda, 425 So.2d 206 (Fla. 4th DCA 1983); Continental Development Corp. of Florida v. Duval Title and Abstract Co., 356 So.2d 925 (Fla. 2d DCA 1978).