**BMC INDUSTRIES, INC., Plaintiff,**

v.

**BARTH INDUSTRIES, INC., et al., Defendants.**

**No. 89–6443–CIV.**

United States District Court, S.D. Florida, Miami Division.

Feb. 13, 1995.

Bruce Weihe, John Hargrove, Heinrich Gordon Batchelder Hargrove & Weihe, Ft. Lauderdale, FL, for plaintiff.

Richard S. Banick, Fowler, White, Burnett, Hurley, Banick & Strickroot, Miami, FL, for defendants.

**K. MICHAEL MOORE, District Judge:**

Counterplaintiff Barth Industries, Inc. ("Barth") alleges that, had it not been fraudulently induced into contracting to build a machine, it could have used the funds expended on the contract to pursue other, more gainful business opportunities. Counterdefendant BMC Industries, Inc. ("BMC") moved to strike this claim, requiring the Court to decide whether Florida law permits recovery of lost opportunity income in these circumstances.

## I. Factual Background

Barth has counterclaimed against BMC for fraudulent inducement to contract. In 1986, Barth contracted to build equipment for BMC that would automate portions of BMC's manufacturing operations. This contract ultimately failed, and BMC brought contract and business tort claims against Barth in June 1989. Barth counterclaimed, contending that BMC had fraudulently misrepresented the complexity, operations and problems involved in BMC's manufacturing process.

Barth sought certain "lost profit" damages arising out of BMC's alleged fraudulent inducement to contract. According to Barth, its limited cash reserves were insufficient to embark on *both* the BMC project *and* existing capital expansion plans. Presumably because the BMC project was more lucrative, Barth opted not to pursue capital expansion. Barth now seeks the profits that it could have achieved had it gone ahead with capital expansion. Specifically, Barth states that it needed to purchase machinery to continue serving its clients in the machine tooling market and that its failure to do so resulted in lost sales to these clients.

## II. Discussion

BMC moved to strike Barth's claim for damages, contending that Florida law recognizes prejudgment interest as the only vehicle for recovery of the lost opportunity income sought by Barth.[1]

---

1. In its complaint, BMC claimed that Barth's misconduct resulted in a loss to BMC's working capital which caused BMC to take out business loans that resulted in a loss of return on investment. The Court permitted this claim to go to the jury for two reasons. First, the parties stipulated to its admissibility. Second, and more fundamentally, Barth's claim that a diversion of corporate funds resulted in lost opportunity income is substantially different from BMC's claim for actual injuries arising directly out of an impairment of its working capital. *Minpeco, S.A. v. Hunt,* 686 F.Supp. 420, 426 (S.D.N.Y.1988) ("I am not persuaded … that there is no distinction between an internal diversion of corporate funds … and interest paid on actual loan.… To the contrary, it seems logical to conclude that while the former amounts to a lost opportunity for

BMC's argument has merit. The function of prejudgment interest is *"to compensate a plaintiff for the loss of use of its money* over the period of time that a plaintiff is wrongfully deprived of the use of that money." *Zucker v. Sears Roebuck & Co.,* 589 So.2d 454 (Fla.App.1991) (emphasis added).[2] *Accord West Virginia v. United States,* 479 U.S. 305, 310 n. 2, 107 S.Ct. 702, 706 n. 2, 93 L.Ed.2d 639 (1987) ("Prejudgment interest serves to compensate for the loss of the use of money due as damages from the time the claim accrues until judgment is entered, thereby achieving full compensation for the injury those damages are intended to redress"); *see also* Comment, "Prejudgment Interest: Survey and Suggestion," 77 *Nw.U.L.Rev.* 192 (1982).

Applying this principle, two Florida courts have recognized that recovery of lost opportunity income arising out of a loss of the use of money is not recoverable. In *Florida Farm Bur. Cas. Ins. Co. v. Patterson,* 611 So.2d 558 (Fla.App.1992), a plaintiff involved in a car accident towed his car to a body shop for a repair estimate. Unknown to the plaintiff, the insurer of the other driver involved in the accident later had the car towed to a second body shop, which stripped the car for salvage. Suing for conversion of the car, the plaintiff sought damages for the loss of the use of money he had paid on his car note since the time of the conversion. The trial court declined to award these damages, and this decision was affirmed on appeal. The court of appeal explained:

> [T]he correct measure of compensatory damages for the conversion of appellee's auto is the fair market value of the auto at the time of its conversion, plus prejudgment interest.... Appellee is not entitled to recover in a conversion action for ... loss of the use of the money that he continued to pay on his auto loan.

*Id.* at 559–60.

Similarly, in *Chillemi v. Rorabeck,* 629 So.2d 206 (Fla.App.1993), buyers of a home alleged that the sellers had falsely warranted that the home had clean title when, in fact, the home was encumbered with a lien. The buyers discovered the lien when they unsuccessfully sought to mortgage the home in order to obtain funds to expand their business. Claiming that their mortgage would have been approved had title been clean, the buyers sued for profits that would have accrued had they received the money to expand their business.

Although the trial court granted summary judgment by default in favor of the buyers, the court of appeal set aside the trial court's compensatory damages award. Acknowledging that the buyer's "loss of profits" claim would arise again on remand, the court cautioned that the "buyers do not cite any authority for awarding loss of profits allegedly caused by the loss of use of the money under circumstances similar to this transaction."

Accordingly, BMC's motion to strike is granted.

---

profit, the latter is an actual expense, a claim for actual damages which should be treated like any other damage claim.").

**2.** The Court's jurisdiction in this matter arises out of the diversity of the parties. Accordingly,

Florida law governs the Court's consideration of prejudgment interest questions. *See, e.g., United Aluma Glass v. Bratton Corp.,* 8 F.3d 756, 759 (11th Cir.1993).