415 So.2d 1295 (1982)
CANAL INSURANCE COMPANY, Appellant,
v.
HARTFORD INSURANCE COMPANY, Appellee.
No. AG-157.
District Court of Appeal of Florida, First District.
June 4, 1982.
Rehearing Denied July 22, 1982.
*1296 James N. McConnaughhay of McConnaughhay & Roland, P.A., Tallahassee, for appellant.
Paul F. Hartsfield, Jr., and R. Jeremy Solomon, of Booth & Conner, P.A., Tallahassee, for appellee.
WIGGINTON, Judge.
This appeal involves the tortuous question of which insurance company bears the burden of indemnity following a settlement by the insurers on behalf of party defendants involved in wrongful death actions. Although the points raised on appeal are several and suitable for permutation, our determination of one leads inexorably to our reversal of all.
The controversy stems from a lease agreement entered into between Robert Saint, a resident of Americus, Georgia, and Americus Steel Fabricators, Inc., also of Americus, in February, 1975. The agreement provided that Saint would lease his tractor and trailer to Americus for purposes of hauling steel in interstate commerce. Complying with the rules and regulations promulgated by the Interstate Commerce Commission, specifically 49 C.F.R., Section 1057.12(1)(d), the lease provided that Americus, as the authorized carrier lessee, would have the exclusive use and control of the equipment. However, by the agreement, Saint and Americus sought to shift the responsibility arising from negligent operation of the tractor and trailer from Americus to Saint. The alleged intent of the parties was that Saint would procure a policy of public liability insurance, including Americus as an additional insured.
*1297 Pursuant to the agreement, Saint, through an independent insurance agent, obtained a policy issued by Canal Insurance Company. However, the policy named only him as the insured, and, unknown to either Saint or his agent, neither of whom read the policy, it included an endorsement specifically excluding from coverage "any person, firm or organization using the described automobile pursuant to any lease ..." In the event the vehicle was so used, the policy would afford the named insured, Saint, only excess coverage. Americus, on the other hand, was already insured by Hartford Insurance Company.
In the early evening of January 15, 1976, McArthur Whitehead, an employee of Americus, was directed by the company to travel into Florida to deliver some materials. Driving the leased tractor and trailer, Whitehead proceeded south on U.S. 19 into Florida via Monticello. South of Perry, Whitehead was involved in an accident with another automobile resulting in the deaths of two Florida residents.
During the course of the resultant lawsuits, hearings were held for the purposes of determining whether Hartford or Canal afforded primary coverage and also whether Canal afforded insurance coverage over the defendant, Whitehead. It was determined by the trial court that Canal did afford coverage to Whitehead but that Hartford provided primary coverage for the alleged damages suffered by the plaintiffs as a result of the accident.
Following that determination, a settlement was reached between the parties totalling $195,000, Canal contributing $25,000 and Hartford contributing $170,000. Both Canal and Hartford had policy limits of $100,000 per person and $300,000 per accident.
The case then proceeded on the issues framed in the cross claims between the two insurance companies. Hartford filed two cross claims for indemnity. The first one was against Saint, alleging that Hartford was a third party beneficiary to the lease contract between Saint and Americus. The second claim was against Whitehead, on the basis of Whitehead's alleged active negligence.
Canal also filed two cross claims for indemnity against Americus and Hartford. The first claim was founded on Saint's alleged vicarious liability. The second one arose from Canal's defending Hartford's insured, McArthur Whitehead. Canal also filed a motion for summary judgment regarding Hartford's cross claims, contending that Hartford was not a third party beneficiary to the lease agreement and further, that Hartford could not sue its own insured, Whitehead.
The trial court orally ruled in favor of Canal but on rehearing, denied the motion for summary judgment. A final hearing was held, and based upon the issues and arguments raised in the cross claims, the court announced its intention to recede from its earlier order and determine that Canal was the primary carrier. The trial court was able to make that determination by reforming the insurance policy to reflect the alleged intent of the parties to include Americus as a named insured.
There is little doubt that Saint and Americus intended for Americus to be a named insured. However, in reforming the insurance contract, the court erred in finding Saint and Canal to be mutually mistaken over that intent. The policy must stand as issued, thereby unequivocally excluding Americus and Whitehead from its coverage.
It is universally held that in order for a trial court to reform a contract, the evidence must clearly and convincingly show a mutual mistake of fact. Otherwise, the court will not be able to overcome the strong presumption that the contract expresses the intent of the parties. Boston Old Colony Insurance Company v. Popple, 305 So.2d 877, 879 (Fla. 1st DCA 1974). Moreover, the mutual mistake must be determined to have existed at the time the contract was reduced to writing. Old Colony Insurance Company v. Trapani, 118 So.2d 850, 852 (Fla.2d DCA 1960). Viewing the facts and all reasonable inferences that may be drawn from them in a light most *1298 favorable to the insured, it is clear that as a matter of law reformation was not warranted.
The evidence indicates that Saint contacted James Bowen, a Nationwide insurance agent, advising Bowen that he needed insurance. Bowen, who was never at any time an agent for Canal, completed the application requesting Saint to be the named insured and likewise indicating that no "certificates" were required. Neither Americus nor Whitehead were named as additional insureds on the application nor did the application reflect the lease arrangement. Nevertheless, Bowen forwarded the application to the Canal agent in Atlanta, Georgia. The policy was issued in April, 1975, with the endorsement excluding coverage of a lessee of the vehicle. As mentioned earlier, neither Saint nor Bowen read the policy. Although Canal instituted its own investigation of the application, which revealed the lease agreement, Bowen did not formally request Americus be added as a co-insured until March, 1976, approximately two months after the date of the accident.
Despite the good intentions of both Saint and Bowen to include Americus as a named insured under the policy, we find that at the time the policy was issued, there was no mutual mistake existing between Saint and Canal as to the type of insurance requested. Canal issued a policy clearly reflecting the information designated on the application. In that regard, Boston Old Colony Insurance Company v. Popple, relied on by the trial court, is distinguishable. In that case, unlike the case at bar, the insured not only was dealing directly with the insurance company's agent who was aware at all times of the insured's intent, but the mistake arose from a clerical error which resulted in deleting the insured's property from the policy, which had already issued, by way of a subsequent endorsement. Here, the court attempted to extend coverage to include a party already excluded by way of an endorsement, on the basis of what could only be considered a unilateral mistake. In that respect the trial court erred.
Hartford's argument that Canal has waived enforcement of, or has been estopped from endorsing, the exclusion provision based on Canal's alleged knowledge of and investigation into Saint's intended purpose for the policy is equally erroneous. Poole v. Travelers Insurance Company, 130 Fla. 806, 179 So. 138 (1937), cited as authority for Hartford's argument, is misapplied in that the exception to that policy clearly did not exclude the vehicle which the insurance company sought to have excluded. In dicta, however, the supreme court observed that the knowledge imputed to the insurance company serving to waive the exclusion or exception would had to have existed at the time the policy issued. Unlike the instant case, the evidence in Poole was uncontradicted that the agent was fully aware of facts which brought the insured within the exception at the time he wrote the policy. Cf. Travelers Insurance Company v. Sindle, 186 F. Supp. 8 (W.D.Ark. 1960) (in a case very similar to the one at bar, the federal district court held that neither waiver nor estoppel could be asserted to extend coverage under a policy in which coverage was specifically excluded).
For the foregoing reasons, we hold that the trial court erred in reforming the policy of insurance issued by Canal to Robert Saint.
Keeping in mind, then, that Canal's policy of insurance does not extend coverage to Americus and Whitehead, it is clear that the parties failed to effectively shift responsibility contractually by way of the lease agreement. Compare, Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975), and Truck Discount Corporation v. Serrano, 362 So.2d 340 (Fla. 1st DCA 1978). Therefore, under the I.C.C. rules and regulations, Americus, as lessee, and Hartford, as the insurer bear primary liability. Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.; see also Simmons v. King, 478 F.2d 857 (5th Cir.1973); and Hagans v. Glens Falls Insurance Company, 465 F.2d 1249 (10th Cir.1972).
*1299 Consequently the court erred as a matter of law in determining that Hartford could obtain subrogation in an indemnity action against McArthur Whitehead, the driver of the tractor and trailer. An insurance company does not have any right of indemnity from an insured protected by its policy. Roth v. Old Republic Insurance Company, 269 So.2d 3 (Fla. 1972); Sherwood Trucking, Inc. v. Carolina Casualty Insurance Company, 552 F.2d 568 (4th Cir.1977). In that it was undisputed that Whitehead was and is an insured under Hartford's policy, Hartford has no cause of action against him.
Further, the trial court erred as a matter of law in denying Saint's and Canal's cross claim for indemnity against Americus and Hartford. The endorsement in Canal's policy provides that under circumstances involving a lease of the vehicle, the insurance afforded Saint would be excess insurance over any other insurance. Since the settlement fell within the policy limits, no excess insurance coverage was needed. Thus, Canal was neither primarily nor secondarily liable for damages resulting from this accident. Transport Indemnity Company v. Travelers Indemnity Company, 357 So.2d 795 (Fla. 1st DCA 1978).
Finally, the trial court erred as a matter of law in determining that Hartford could obtain subrogation in an indemnity action against Saint and Canal for the amounts it paid under the settlement agreement. Apparently Hartford is indirectly seeking subrogation to any potential claim that Americus might have against Saint for breach of contract. However, Hartford is not a third party beneficiary to the lease agreement. Although it might have derived some incidental or consequential benefit from its terms had the intended policy been obtained by Saint, there was no clearly expressed intent that the purpose of the lease agreement was to confer a direct and substantial benefit upon Hartford. Muravchick v. United Bonding Insurance Company, 242 So.2d 179 (Fla.3d DCA 1970); American Empire Ins. Co. of South Dakota v. Fidelity and Deposit Company of Maryland, 408 F.2d 72 (5th Cir.1969); State ex rel. Westinghouse Electric Supply Co. v. Wesley Construction Company, 316 F. Supp. 490 (S.D.Fla. 1970), aff'd, 453 F.2d 1366 (5th Cir.1972). In this instance, Saint's agreement to procure insurance was solely for the benefit of Americus, not Hartford.
Thus, we reverse as to all points on appeal and remand the cause to the trial court for entry of an order consistent with this opinion.
JOANOS and THOMPSON, JJ., concur.