645 So.2d 75 (1994)
CIRCLE MORTGAGE CORPORATION, a Florida corporation, Appellant/Cross-Appellee,
v.
Jack K. KLINE and Mary E. Kline, his wife, Appellees/Cross-Appellants.
No. 93-0882.
District Court of Appeal of Florida, Fourth District.
November 9, 1994.
*76 Mark S. London, Law Offices of Mark S. London, P.A., Hollywood, for appellant, cross-appellee.
William F. Sullivan, William F. Sullivan, P.A., Portley and Sullivan, Pompano Beach, for appellees, cross-appellants.
PER CURIAM.
Appellant, Circle Mortgage Corporation (Circle Mortgage), plaintiff below, appeals from a final judgment granting reformation of a mortgage, but not damages. Appellees, Jack K. Kline and Mary E. Kline (the Klines), defendants below, cross-appeal the trial court's grant of reformation. We affirm the trial court's judgment of reformation and its decision not to award damages.
The Klines planned to purchase a condominium belonging to Mary Kline's father and applied to Circle Mortgage to secure a first mortgage. Circle Mortgage is a mortgage banker whose business involves providing interim funds at closing and then selling the mortgages in the secondary market. Circle Mortgage provided the Klines with a disclosure sheet and documentation, reflecting that they were applying for and receiving an adjustable rate mortgage (ARM) with an interest rate change date every twelve months. The disclosure form, which was signed by the Klines in November 1991, prior to the December *77 closing, specifically provided that the first interest rate change date would take place eleven months after the due date of the first mortgage payment. The closing was expedited at the Klines' request to take place before the end of the year so that the Klines could take advantage of the homestead exemption.
At the closing, the Klines signed documents prepared by Circle Mortgage or its agent. One document contained a clerical scrivener's error, providing that the first interest rate change would occur in December 1993, which was twenty-three months after the closing, as opposed to January 1993, as contemplated by the disclosure form.
At the same time that the Klines executed the mortgage and note, they executed a document setting forth compliance requirements entitled "Compliance Agreement." The document, execution of which was a prerequisite to Circle Mortgage's funding of the loan, required the Klines to:
fully cooperate and adjust for any clerical errors, omissions, mistakes or corrections required on any or all closing documentation as deemed necessary or desirable in the reasonable discretion of lender or lender's attorneys, title insurers, or closing agent to enable lender to sell, convey, guarantee, or market said loan to any entity. ...
The undersigned borrower(s) do hereby so agree and covenant in order to ensure that the loan documentation executed this date will conform and be acceptable in the market place in the instance of transfer, sale or conveyance by lender of its interest in and to said loan documentation. (Emphasis added.)
The clause provides protection in the event that clerical mistakes occur. The Klines were aware at the time they applied for the mortgage that Circle Mortgage would do no more than provide the interim funds and then market their loan to Beneficial Mortgage Corporation (Beneficial).
When Beneficial received the documentation from Circle Mortgage relevant to its anticipated purchase of the Kline loan, it realized that the change date did not conform to the terms intended and discussed. Accordingly, Beneficial refused to accept the mortgage because the initial change date was in error. Circle Mortgage contacted the Klines on several occasions in an attempt to obtain their cooperation in executing corrected documents so that it could successfully market the loan as anticipated. The Klines refused to abide by the compliance agreement and to execute the documents necessary for Circle Mortgage to market their loan to Beneficial, unless they were essentially guaranteed the low interest rate for the first twenty-three months. As a result of being unable to market the mortgage to Beneficial, Circle Mortgage was required to refund the line of credit it used to provide the interim funds. It then utilized its own monies to fund the mortgage and essentially became the mortgage holder.
Circle Mortgage filed a three-count amended complaint seeking to foreclose the note and mortgage, to reform the note and mortgage and for damages and attorney's fees arising from the breach of the compliance agreement. Circle Mortgage claimed damages flowing from the inability to market the loan without a significant discount and a loss of use of the monies it loaned. The trial court granted Circle Mortgage's prayer for reformation, but found in favor of the Klines on the counts for foreclosure and for breach of contract damages. Although Circle Mortgage contends that the trial court refused to award attorney's fees, according to the final judgment, the trial court, in fact, "retained jurisdiction as to the parties' entitlement to and amount of attorneys' fees and costs."
We hold that the trial court was correct when it granted reformation contrary to the Kline's assertion, because there was a definite prior agreement between the parties. Compare Belitz v. Riebe, 495 So.2d 775 (Fla. 5th DCA 1986). A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument. Providence Square v. Biancardi, 507 So.2d 1366, 1369 (Fla. 1987); Blumberg v. American Fire & Casualty Co., 51 So.2d 182 (Fla. 1951); Malt v. R.J. Mueller *78 Enterprises, Inc., 396 So.2d 1174 (Fla. 4th DCA 1981). A mistake is mutual when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument. Providence Square, 507 So.2d at 1372; Blumberg, 51 So.2d at 184.
The fact that one party drafts the document does not preclude reformation on the grounds of mutual mistake. Providence Square, 507 So.2d at 1370. The rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached. Id.; Ayers v. Thompson, 536 So.2d 1151, 1154 (Fla. 1st DCA 1988). Although ordinarily a writing will be looked to as the only expression of the parties' intent, in a reformation action in equity, parol evidence is admissible to demonstrate that the true intent was other than as expressed in the writing. Providence Square, 507 So.2d at 1371.
The supreme court has set forth our standard of review in equitable actions for reformation of a written instrument:
[T]he chancellor's findings of fact are entitled to a presumption of correctness. Though the evidence may be subject to varying interpretations, the chancellor's judgment resolving evidentiary conflicts will not be disturbed on appeal unless it is shown to be clearly erroneous.
Id. at 1372 and cases cited therein. Although the trial court's judgment does not contain findings of fact, we agree that the trial court's judgment of reformation is not clearly erroneous. The evidence supports a finding of mutual mistake as both parties intended to agree to a one-year ARM with an initial twelve month change date. There is ample evidence to support the contention that the initial interest rate change date in a twelve-month ARM was never intended to take place two years after closing.
The granting of reformation, an equitable remedy, does not automatically entitle Circle Mortgage to damages. Circle Mortgage relies on the following language in the compliance agreement to support its claim for damages:
In the event that any such error, omission or mistake requires the payment of monies, the undersigned parties agree to pay the amount due within three days of receiving notice thereof, and the undersigned agree to indemnify and hold the closing agent and/or lender harmless from all liability in acting as the escrow agent hereunder. In the event the closing agent and/or lender is required to hire an attorney to enforce the provisions of this agreement, the undersigned agree to pay all costs of collection, including reasonable attorney's fees, costs, whether or not suit is brought.
This clause entitles Circle Mortgage to additional monies incurred by it as a result of the error and requires indemnification for such monies. However, it does not independently establish a right to damages. Circle Mortgage claims it presented uncontroverted evidence of damages totalling $26,355, which consisted of a $21,000 loss of value of the loan and a $5,355 loss of use of the money it loaned to the Klines. We disagree.
The owner of Circle Mortgage testified that because of the mistake, he was unable to sell the mortgage as intended, except at a substantial discount.[1] Thus, Circle Mortgage argues it is entitled to the difference between the value of the mortgage and the discounted value of the mortgage with the scrivener's error. The owner testified that the highest offer he received for the mortgage was two-thirds of the mortgage, a discount of $21,000. However, as of trial, Circle Mortgage had not sold the mortgage, but held the mortgage loan and continued to receive the full amount of the monthly mortgage payments. While we understand that Circle Mortgage was in the business of selling mortgages, not of lending money and holding mortgages, the trial court could have properly found that proof of actual damages suffered as a result of the diminution of value of the loan was too speculative and uncertain. *79 See McCall v. Sherbell, 68 So.2d 362 (Fla. 1953); Chillemi v. Rorabeck, 629 So.2d 206 (Fla. 4th DCA 1993).
In addition, Circle Mortgage, through its owner, testified that if the loan was refinanced, there would probably be no loss of the loan's value. Circle Mortgage made a business decision to hold the mortgage rather than sell it at a substantial discount or seek refinancing.
The other item of damages claimed was loss of use of the money that Circle Mortgage ended up lending the Klines, funds which it claims could have been invested elsewhere at a greater return. We would first note that to award damages for loss of value of the loan if sold at a discount and for loss of use of the monies would amount to a double recovery.
Concerning the testimony on loss of use, Circle Mortgage's owner testified that in the past three years, Circle Mortgage had received between eight and one half and ten percent return on its corporate funds. No independent records were introduced to substantiate this claim. The owner testified that over the twelve-month period during which Circle Mortgage had held the Kline's mortgage, it lost $5,355, which is eight and one-half percent of $63,000. Circle Mortgage's argument on loss of use neglects the fact that during this same time, Circle Mortgage was receiving timely mortgage payments from the Klines, which included an interest rate of five and three-quarter percent for twenty-three months. The trial court, as a finder of fact, could have simply rejected that Circle Mortgage would have earned eight and one-half percent on its monies, especially in light of interest rates in the 1992-93 time period.
While it appears that Circle Mortgage did not receive the benefit of the bargain it contemplated as a result of the Klines' refusal to adhere to the compliance agreement, the majority of the damages it claims to have incurred are speculative or undocumented. For example, the owner of Circle Mortgage complained that making the loan to the Klines "looks very bad on our record for any line of credit." He further explained that Circle Mortgage was required to maintain a minimum mortgage portfolio amount of funds to maintain his line of credit. However, the owner failed to quantify this potential element of damages in testimony or in argument. Circle Mortgage introduced no evidence of actual costs incurred as a result of the clerical error.
Concerning the entire question of damages, we note if the parties now cooperate, the mortgage apparently could be marketed without a significant loss by refinancing it. The previous impediments to refinancing were the conditions that the Klines placed on their willingness to sign other documents and Circle Mortgage's stated unwillingness to go through steps to refinance because of being "stuck once" by the Klines. Concerning the Klines' proviso that they would only execute additional documents if Circle Mortgage indemnified them for increases resulting from the adjusted change date, the agreement the Klines signed required them to pay any additional costs incurred.
Circle Mortgage's owner had reason to be frustrated by the Klines' unwillingness to acknowledge the scrivener's error, especially in light of his previous twenty years of experience of borrowers being more cooperative than the Klines where errors were discovered. However, if the loan as reformed can be sold, or if refinanced, marketed at its full value, this result would place the parties close to the position they would have occupied if the clerical error had not been made  except for the expenses connected with this litigation.
On the issue of attorney's fees, we agree that the compliance agreement clearly provided for attorney's fees to be awarded in the event that Circle Mortgage had to institute legal proceedings to enforce the compliance agreement. However, the trial court did not deny attorney's fees; rather it retained jurisdiction to determine entitlement and amount. Where a final judgment explicitly reserves jurisdiction to determine attorney's fees, the issue of attorney's fees is not ripe for review. See Winkelman v. Toll, 632 So.2d 130 (Fla. 4th DCA 1994); Rec Centers, Inc. v. Shaughnessy, 407 So.2d 971 (Fla. 4th DCA 1981).
*80 We therefore affirm the judgment of reformation and remand with directions to the trial court to order the Klines to execute whatever documents are necessary to achieve that result. We further direct that any monies being held in the registry of the court be released.
AFFIRMED WITH DIRECTIONS.
FARMER and PARIENTE, JJ., concur.
POLEN, J., concurs in part and dissents in part with opinion.
POLEN, Judge, concurring in part and dissenting in part.
I agree with that part of the majority opinion which affirms the trial court's reformation of the parties' mortgage, and which finds no error in the trial court's reservation of jurisdiction to determine Circle Mortgage's claim for attorney's fees.
I would dissent, however, as to the affirmance of the trial court's denying appellant's claim for damages. While I would agree that appellant's evidence as to the amount of damages, as related through the unrebutted testimony of appellant's president, might have been speculative, I think the trial court was premature in denying damages outright. It is clear that both parties understood that Circle Mortgage intended to assign the Klines' mortgage to Beneficial Mortgage Corporation as soon as possible after closing. This was the usual method of business for Circle Mortgage  not holding the mortgage themselves. It is also clear that due to the Klines' breach of the Compliance Agreement, Circle Mortgage was unable to obtain the benefit of their bargain. Circle Mortgage's actual damages, however, could not be finally determined until the court-ordered reformation was put into effect, to see what might then occur vis-a-vis refinancing between Circle Mortgage and the Klines, some third party, ultimate conveyance of the reformed mortgage to Beneficial, or some other outcome.
I think the trial court erred in failing to reserve jurisdiction to determine Circle Mortgage's damages, if any, rather than denying them outright. In this respect only, I dissent.
NOTES
[1] After Circle Mortgage sells its loans to Beneficial, Beneficial then sells the loans to Fannie Mae (FNMA). According to testimony, a loan that is older than one or two months is considered to be a "seasoned" mortgage and is not as marketable.