729 So.2d 476 (1999)
USAA CASUALTY INSURANCE COMPANY, also improperly known as USAA Property & Casualty Insurance, Appellant,
v.
Crista Marie THREADGILL, a minor, by and through her parents, Charles and Gricelda Threadgill, and Caitlin Threadgill, a minor, by and through her parents, Charles and Gricelda Threadgill, Charles Threadgill and Gricelda Threadgill, individually, Jeffrey Alton Lacey, and Malcolm B. Mackintosh, Appellees.
Nos. 98-0102, 98-0431.
District Court of Appeal of Florida, Fourth District.
March 24, 1999.
Rehearing Denied April 30, 1999.
*477 Betsy E. Gallagher of Gallagher & Howard, Tampa, and Richard J. Suarez of Hardeman & Suarez, P.A., Miami, for appellant.
Richard A. Kupfer of Richard A. Kupfer, P.A., and William J. McAfee of Wagner, Johnson & McAfee, P.A., West Palm Beach, for Appellees-Crista Marie Threadgill, Charles Threadgill, Gricelda Threadgill, and Caitlin Threadgill.
Thomas R. Shahady of Houston & Shahady, P.A., Fort Lauderdale, for Appellee-Malcolm B. Mackintosh.
GROSS, J.
The trial court in this case granted summary judgment in favor of the insured on the insurance company's action to reform an insurance policy. We affirm, because the record does not demonstrate the existence of a mutual mistake sufficient to justify reformation.
Since 1994, appellee Malcolm Mackintosh was the named insured under an automobile liability policy issued by appellant USAA Casualty Insurance Company ("USAA"). In November, 1995, his car was involved in an accident injuring Crista Threadgill, a minor. As a result, Charles and Gricelda Threadgill, her parents, filed a lawsuit against Mackintosh. A dispute arose between USAA and the parties to the lawsuit over the policy limits applicable to Crista's individual claim.
Mackintosh's policy was renewed every six months. On all policies issued to him, the declarations pages showed limits of liability of $100,000 for "EA PER" and $300,000 for "EA ACC." A limitation of liability provision in a policy that expired in April, 1995, provided that the limit of liability shown in the declarations page for each person was the maximum limit of liability for "all damages for bodily injury sustained by any one person in any one auto accident." In 1995, USAA drafted a new Florida Auto Policy, consistent with a plan to write a separate automobile contract for each state in which it did business. The "limit of liability" provision of the new policy provided in pertinent part:
For BI [bodily injury] sustained by any one covered person in any one accident, our maximum limit of liability for all resulting damages ... is the limit of liability shown in the Declarations for "each person" for BI Liability. Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for BI Liability is our maximum limit of liability for all damages for BI resulting from any one accident.... These limits are the most we will pay regardless of the number of covered persons, claims made, vehicles or premiums shown in the Declarations, or vehicles involved in the auto accident.
Significantly, the new policy added the adjective "covered" to modify "person" in the limit of liability provision. Crista Threadgill did not fall within the policy's definition of a "covered person." Under the terms of the new policy, the $100,000 per person limitation in the policy would not apply to her claim, which would be subject only to the $300,000 ceiling for each accident. This revised version of the policy was the one in effect at the time of the accident in this case.
USAA filed an action against Mackintosh and the Threadgills to correct what it characterized as a "scrivener's error" in the policy. USAA alleged that when it rewrote its policy in 1995, seventeen months before the Threadgills' claim was filed, it had inadvertently added the word "covered" to the limitation of liability section of its policy. Contained in the appellees' response to the lawsuit was the assertion that reformation was not proper, since there had been no mutual mistake as to the drafting of that section of the insurance policy.
Mackintosh and the Threadgills moved for summary judgment on USAA's claim for reformation of the insurance contract. In support of the motion, they filed Mackintosh's affidavit which stated that as the insured, he was not involved in the drafting of the policy, nor was he advised of any substantive change to the renewed policy. In opposition to the motion, USAA filed an affidavit of a senior staff underwriter which asserted that in redrafting its policy, it was USAA's intent that liability coverage remain limited to $100,000 per person, including those who did not fit within the policy's definition of a "covered *478 person"; that "someone [had] inadvertently added the word `covered'" to the "Limit of Liability" section of the policy; that USAA did not notice the error before submitting the policy to the State of Florida and implementing it for all new and renewal policies after March 1, 1995; and that after discovering the "scrivener error" in June, 1996, USAA corrected its policy form, with the change being approved by the insurance commissioner on July 8, 1996. USAA acknowledged in this litigation that the policy language at issue was used in over 70,000 other Florida policies in 1995 and 1996.
The trial court entered final summary judgment against USAA on the ground that there was no evidence of "mutual mistake in the drafting of the language of the policy." The judgment determined that the Threadgills were entitled to "$300,000 in bodily injury coverage" for Crista's claim.
"A court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1369 (Fla.1987). An insurance policy as issued and accepted:
is prima facie the contract of the parties; and, in order to have it reformed, the burden is on the plaintiff to show that a different contract was entered into from that which was reduced to writing, and this fact must be proved by clear, convincing, and satisfactory evidence, not alone by a preponderance of the evidence.
Rosenthal v. First Nat'l Fire Ins. Co., 74 Fla. 371, 381, 77 So. 92, 94 (1917); Allstate Ins. Co. v. Vanater, 297 So.2d 293, 298 (Fla.1974) (holding that plaintiffs burden of proof in reformation action is by "clear and convincing evidence"). Rigorous application of the higher standard of proof in reformation cases promotes the policy that parties should not be subjected to contractual obligations to which they never agreed. See Smith v. Royal Automotive Group, Inc., 675 So.2d 144, 154 (Fla. 5th DCA 1996).
For an insurance policy to be reformed, the Florida supreme court has written that:
like that of any other written contract, the want of conformity to the agreement of the parties must be occasioned by a mistake which is mutual and common to both parties to the instrument. A mistake on one side may be a ground for rescinding, but not for reforming, the contract. Where the minds of the parties have not met, there is no contract, and hence none to be rectified.
Fidelity Phenix Fire Ins. Co. of New York v. Hilliard, 65 Fla. 443, 446, 62 So. 585, 586 (1913).
The supreme court has concisely written that a mutual mistake sufficient to support reformation requires a showing "that the parties agreed on one thing and when they put it in the contract they said something different." Blumberg v. American Fire & Cas. Co., 51 So.2d 182, 184 (Fla.1951).
Cases finding reformation appropriate have typically involved contact between the parties which resulted in the formation of an express contract and which preceded the creation of a written document containing a mistake, contrary to an agreed provision in the express contract. For example, in Blumberg, the insured and the insurance agent intended for a policy to cover all of the insured's business operations. The parties had had extensive dealings; the carrier had audited the insured's books to arrive at a premium charge on the policy. In reducing the policy to writing, the scrivener mistakenly failed to write the policy to include coverage for businesses which the insured operated in his individual capacity. The supreme court wrote that such a mutual mistake in the policy as written was correctable. See 51 So.2d at 183-84.
Similarly, Mueller v. Marks, 576 So.2d 1337 (Fla. 4th DCA 1991), arose out of the sale of a condominium. The written purchase contract provided that the buyer was to acquire fee simple title to the unit, and that the seller could remain in the unit as a tenant. The deed granted the seller a "life estate for five years," an interest in property that did not conform to the contract. This court held that the buyer was entitled to reformation of the deed to mirror the terms of the contract to reflect that the buyer owned the condominium in fee simple. See *479 id. at 1337-38; see also Kidd v. Fowler, 498 So.2d 969, 970 (Fla. 4th DCA 1986) (allowing reformation of a deed which failed to include a clause in a purchase and sale agreement reserving a life estate); Nall v. Raybon, 451 So.2d 923, 924 (Fla. 1st DCA 1984) (allowing reformation where a mortgage cancellation erroneously included certain property); Boston Old Colony Ins. Co. v. Popple, 305 So.2d 877, 880 (Fla. 1st DCA 1974) (allowing reformation of auto insurance policy where the wrong vehicle had been deleted from coverage).
A final example of a reformation based on mutual mistake is contained in Circle Mortgage Corp. v. Kline, 645 So.2d 75 (Fla. 4th DCA 1994). There, this court affirmed a trial court's reformation of a note and adjustable rate mortgage which failed to contain an interest rate change date that had been specified in a previously signed disclosure form which contained the parties' agreement. We observed that "[t]he rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached." Id. at 78.
In this case, the trial court correctly concluded that reformation was not appropriate. USAA cannot make the showing under Rosenthal that a different contract was entered into from the policy which was reduced to writing and supplied to Mackintosh. There was never any meeting of the minds on the "limit of liability" provision in the policy. It was never discussed and never negotiated. The provision did not derive from information supplied by the insured. The "limit of liability" provision is buried deep in the boilerplate of the policy. Once Mackintosh began to pay a premium on the new policy, that policy became the contract of the parties. There was no mutual mistake. At most, USAA demonstrated a unilateral mistake, which "may be a ground for rescinding, but not for reforming the contract." Fidelity Phenix Fire Ins. Co. of New York, 62 So. at 586.
In the failure to demonstrate a mutual mistake, this case is most similar to Mustelier v. Consolidated Mutual Insurance Co., 296 So.2d 634 (Fla. 3d DCA 1974), where the insureds under a homeowners' policy appealed a judgment limiting them to a recovery of $500 for stolen jewelry. The trial court had granted the insurance company's request for reformation of the contract to apply a limitation of liability contained in a policy endorsement. The endorsement purporting to limit liability referred to a numbered subsection of the policy that did not exist; the trial court reformed the policy to apply to a differently numbered section of the policy that pertained to theft of jewelry. The endorsement with the erroneous reference had been attached to the policy provided to the insureds. The third district reversed, citing to Rosenthal and holding that there had been no showing of a mutual mistake in the wrong section number contained in the endorsement:
[a]lthough the trial court based its decision upon its determination that it had ascertained the intent of the insurer and the insured, the record is devoid of any evidence that the appellants ever had any knowledge of the limitation. It is difficult to understand how the mistake made can be held to be mutual when there is no evidence to show that the policyholders were ever made aware of the intended limitation.
Mustelier, 296 So.2d at 636.
The final summary judgment denying reformation is affirmed.
TAYLOR, J., and OWEN, WILLIAM C., Jr., Senior Judge, concur.