747 So.2d 974 (1999)
The RESORT OF INDIAN SPRING, INC., Appellant,
v.
The INDIAN SPRING COUNTRY CLUB, INC., Appellee.
No. 98-1671.
District Court of Appeal of Florida, Fourth District.
October 6, 1999.
Rehearing Denied January 7, 2000.
*975 Gerald F. Richman and Joseph F. Hession of Richman, Greer, Weil, Brumbaugh, Mirabito & Christensen, P.A., West Palm Beach, and Michael A. Hanzman and Keith E. Hope of Hanzman, Criden, Korge, Ponce, Chaykin, Ponce & Heise, P.A., Miami, for appellant.
Jack J. Aiello, L. Louis Mrachek and Alan B. Rose of Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., West Palm Beach, for appellee.
WARNER, C.J.
Appellant, the Resort of Indian Spring, Inc. ("RIS"), sought to reform the legal description of property in a deed conveyed to The Indian Spring Country Club, Inc. ("Club") which it claimed that by mutual mistake erroneously included an office building. After a trial, the court concluded that the appellant had not proven a mutual mistake and denied reformation. The appellant claims that the ruling was contrary to the legal weight of the evidence. It also claims that the Club's attorney's testimony that the office building was not intended to be included in the sale is binding on the Club and should warrant reformation. On both points, we affirm.
*976 RIS is the current developer of the Indian Spring community which consists of a planned unit development and country club in Palm Beach County. It purchased the development from Cadillac Fairview in 1986. The property included residential development parcels, the Executive Office parcel, and the Club property. Shortly after acquisition, RIS decided to sell the Club property to the members of the community by converting the Club to equity ownership. The Club property consisted of two golf courses, a clubhouse, and certain recreational facilities. The Executive Office parcel was used by the developer as an administrative sales office. In addition, some utilities (water supply) furnishing club facilities were on the Executive Office parcel.
Substantial negotiations took place between RIS and the Club members over the Wolmer and its lead member-negotiator was Harold Streem. It will serve no purpose to go through the extensive presentation of the negotiation sessions and the progression of drafts of the contract. Ultimately, the Equity Ownership Documents which constituted the purchase agreement from RIS to the members, included "office facilities" as part of the property being transferred to the Club.
Bench Mark Surveyors, which had performed all earlier survey work for RIS, surveyed the property to be sold to the Club. The parties used the legal description provided by Bench Mark which included the Executive Office parcel, and the warranty deed included that legal description. The transaction closed and the deed was recorded in 1988. The documents provided that final turnover of the management of the Club to the members would occur in 1994.
In 1993, RIS discovered that the Executive Office parcel had been included in the legal description of property conveyed to the Club members. Upon discovery, RIS' attorney, Alexander Proujansky, obtained a "scrivener's error affidavit" signed by the president of Bench Mark stating that the legal description of the Office parcel had been included by mistake. In addition, Proujansky met with Wolmer who subsequently wrote a letter (and testified at trial) that the Club, whom he represented at closing, had not intended to receive the Executive parcel in the transaction.
On December 27, 1993, Proujansky convened the Club's Board of Governors, which was still controlled by RIS, for the purpose of approving the filing of a corrective deed to eliminate the Executive Office parcel. Pursuant to the Board's vote, a corrective deed was filed on December 30, 1993, just before the turnover of the Club to the members. Dissatisfied with this last minute board action divesting them of the Office parcel, the Club members filed a class action lawsuit seeking a declaratory judgment that the 1993 corrective warranty and quit-claim deeds were void because the Board had failed to obtain the necessary two-thirds vote of the membership to convey club property. RIS counterclaimed for reformation of the 1988 deed. The issue at trial concerned whether the parties intended to include the Executive Office parcel as part of the conveyance or whether its inclusion in the deed and equity conversion documents was a mutual mistake resulting from a scrivener's error.
The evidence at trial was conflicting. Harold Streem testified that the Club intended the parcel to be included from the beginning of negotiations through closing. His testimony was contradicted by the Club attorney who testified to the contrary. The parties presented an exhaustive trail of documents, including drafts of the Equity Ownership Documents and letters indicating the parties' respective intentions. After hearing all of the evidence, the trial court ruled in favor of the Club. RIS appeals from this order.
In an equitable action for reformation of a contract, the plaintiff must prove by clear and convincing evidence that a mutual mistake occurred to overcome *977 the strong presumption that a contract expresses the intent of the parties. See Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295, 1297 (Fla. 1st DCA 1982); Watkins v. DeAdamich, 187 So.2d 369, 371 (Fla. 2d DCA 1966). On appeal from a reformation action, the trial court's factual findings are presumed correct, particularly where there are evidentiary conflicts, and will not be disturbed on appeal unless clearly erroneous. See Providence Square Ass'n, Inc. v. Biancardi, 507 So.2d 1366, 1372 (Fla.1987); Circle Mortgage Corp. v. Kline, 645 So.2d 75, 78 (Fla. 4th DCA 1994). Given the disputed testimony in the instant case, appellant cannot meet that standard.
RIS cites to Club attorney Wolmer's trial testimony that he knew the parcel was not included. RIS characterizes his testimony as uncontradicted, and then attaches error to the trial court's decision not to accept it. It claims that Wolmer's "unrebutted" actual knowledge is imputed to the Club members through principles of agency. See Ruotal Corp., N.W., Inc. v. Ottati, 391 So.2d 308, 309 (Fla. 4th DCA 1980). In Ruotal, the court attributed knowledge to the landlord of a lease executed by its agent. See id. Thus, the knowledge imputed was affirmative in nature, a positive fact. In the instant case, what RIS wishes to attribute to the Club was Wolmer's conclusion, based upon the lack of particular discussions about the Executive Office parcel, that the Office parcel was not included in the transaction. Nowhere did Wolmer testify that either Club members or RIS representatives specifically told him that the parcel was not included. Thus, RIS wants to bind the Club with a negative inference that the parcel wasn't included because no one talked about it.
In any event, Wolmer's conclusion was rebutted. Streem contradicted almost every detail of Wolmer's testimony. As to the lack of specific discussions about the parcel, Streem explained that he simply assumed that it was included and that he at all times intended it to be part of the transaction. The only specific positive fact testified to by Wolmer regarding the lack of inclusion of the Executive Office parcel was that he showed Streem the survey at closing which designated that the parcel was "not included." However, Streem specifically denied this. Certainly, the Club is not bound by factual evidence that it expressly disputes. It is axiomatic that in matters where the trial court is sitting as trier of both fact and law, "matters pertaining to the credibility of witnesses and the weight of the evidence are exclusively within its province." Davis v. State, 606 So.2d 460, 463 (Fla. 1st DCA 1992) (citation omitted). Thus, it was within the trial court's discretion to accept Streem's testimony and reject the testimony of Wolmer. We find the remaining cases cited by RIS in support of this argument inapposite.
The other points raised by RIS also go to the force and effect of the evidence. RIS claims that the 1983 agreement between Cadillac and the owners regarding the Club facilities, which did not include the Office parcel, was incorporated in the 1988 document, evidencing an intent that the parcel was not included. However, the Equity Ownership Documents state that the earlier agreement is included "except as specifically modified herein." Office facilities are mentioned as part of the 1988 agreement, while no mention of them is made in the 1983 agreement. The trial court could conclude that those "office facilities" comprised the Executive Office parcel included in the 1988 deed.
Similarly, the weight the trial court gave to a consideration of the Club's post-closing conduct is an evidentiary issue for the trial court. The trial court simply found more credence in the Club's evidence than in RIS's presentation. It is not the function of this court to reweigh the evidence. See Vecta Contract, Inc. v. Lynch, 444 So.2d 1093, 1094 (Fla. 4th DCA 1984). The trial court's ruling that there was no mutual mistake in the inclusion of the Office parcel in the 1988 deed is supported by competent substantial evidence. We *978 have carefully reviewed the record and conclude that no error has been shown.
After trial, RIS filed a motion for rehearing based upon newly discovered evidence, claiming that it had located a tape recording of a meeting in which the Executive Office parcel is purportedly mentioned. The trial court denied the motion without a hearing. A motion for rehearing based on newly discovered evidence should be granted when the following are satisfied:
(1) it appears that the [new] evidence is such that it will probably change the result if a new trial is granted, (2) the evidence has been discovered since the trial, (3) the evidence could not have been discovered before the trial by the exercise of due diligence, (4) the evidence is material to the issue, and (5) the evidence is not merely cumulative or impeaching.
Bray v. Electronic Door-Lift, Inc., 558 So.2d 43, 47 (Fla. 1st DCA 1989). Because motions for a new trial based on newly discovered evidence are looked upon with some disfavor as encouraging looseness in practice, it is the proponent's burden to prove due diligence in securing the evidence. See id. However, if the evidence could not have been previously discovered despite the exercise of due diligence, a new trial should be granted. See Dynasty Express Corp. v. Weiss, 675 So.2d 235, 240 (Fla. 4th DCA 1996).
In this case, the motion alleges that the tape in question contains a recording of a negotiation meeting held over ten years ago. Prior to trial, a member of the RIS staff had searched the tapes of negotiation sessions which occurred subsequent to the date of a letter from Wolmer to Streem which suggested that the Executive Office parcel was included in the transaction. After trial, RIS decided to search tapes predating that letter and discovered a tape in which the Office parcel was discussed. In our view, the "discovery" of this tape after trial does not show that due diligence was exercised in locating it prior to trial. The tapes were known and available, but no one bothered to review them until RIS lost at trial. Even if the parties did not specifically remember the meeting, the fact that the parties forgot about the evidence does not make such evidence newly discovered so as to necessitate a new trial. Cf. Holmes v. Holmes, 578 So.2d 323, 325 (Fla. 4th DCA 1991) (affirming trial court's denial of motion for new trial based on new evidence: "[a]pparently the husband is asserting `newly discovered evidence', but this smacks more of forgotten evidence newly remembered. The trial court was correct in rejecting it").
Moreover, a review of the transcript of the tape is not dispositive of the issue, as RIS suggests. It would have merely been one additional piece of evidence which showed that months before the actual closing RIS referred to the parcel as its own. In the tape, Streem does not expressly acquiesce to RIS's statement. Thus, it is not inconsistent with his testimony at trial. Because RIS's motion did not meet the Bray criteria for a new trial based on newly discovered evidence, the trial court correctly denied the motion for a new trial.
For the foregoing reasons we affirm the judgment of the trial court.
SHAHOOD, J., and CHAVIES, MICHAEL B., Associate Judge, concur.