MORGAN, DAVID C., Associate Judge.
Douglas Development Group, Inc., and Plantation Key Office Park LLLP (“the Douglas Appellants”) appeal a final summary judgment entered in favor of Pass International, Inc. (“Pass”), and subcontractors Care Sheet Metal and Roofing, Inc., and Brothers Fire Protection, Inc. (“the Subcontractors”) in their claims for reformation, breach of contract, negligence and statutory violations. Because there was a genuine issue of material fact as to the reformation claim, summary judgment was improper and we reverse.
This action arises from damages sustained as a result of a fire that occurred during a multi-million dollar renovation project of ten buildings, which make up the Plantation Key Office Park. The project was owned and developed by the Douglas Appellants. After the fire, the Douglas Appellants commenced this action against Pass and the Subcontractors.
The Douglas Appellants filed an amended complaint asserting the following claims: (1) breach of the master renovation contract against Pass; (2) negligence against all appellees; (3) claims for statutory violation against the Subcontractors; and (4) a count to reform the master owner-contractor agreement with Pass.
As the basis for the reformation claim, the Douglas Appellants assert that the parties to the contract, Plantation Key and Pass, never intended to include A201[1] as a part of their written agreement. The A201 document was referenced on most of the pages within the Alll-1997 contract form. The Alll represented the written agreement between Pass and Plantation Key.
To support the claim that A201 was incorporated because of mutual mistake, the Douglas Appellants cite to the deposition testimony of Paul Douglas and Robert Waskiewicz, who negotiated and signed the contract on behalf of Plantation Key and Pass, respectively. At the time of the contract, Mr. Waskiewicz was the Vice President of Pass. The testimony of Mr. Waskiewicz relied upon by the appellants, taken as true, proves that the A201 was not discussed or signed by the parties as they prepared the Alll. Further, and over form objections, Mr. Waskiewicz testified to the following:
Q: Is the reference to the A201 in that contract that you have in front of you ... a mistake?
[objections omitted]
A: Yes.
Mr. Douglas, as representative of Plantation Key, also testified that the inclusion of A201 “was an oversight.”
*507 Based on the deposition testimony of Mr. Douglas and Mr. Waskiewicz, the appellants contend that the inclusion of A201 was due to mutual mistake, and therefore reformation was warranted. The appel-lees, however, point to the testimony and affidavit of Pass’ president, Roger Rex, as evidence that A201 was standard form in these contracts and that it was always the intention of Pass that the A201 be incorporated into the Alll. In his affidavit, Mr. Rex avers:
All AIA contract forms Alll-1997 ... explicitly incorporate the general conditions of AIA form A201-1997 ...; these general conditions are an essential element to form Alll-1997; in order to exclude the incorporated General Conditions of A201-1997 from the Alll-1997 contract form, it is necessary to affirmatively provide for such exclusion by additional terms....
Mr. Rex further testified that the AIA “General Conditions” are “part of the contract. It’s written on the front page, every term in the contract has to be clarified by the general conditions. It’s impossible to use an AIA contract without the general conditions.”
The parties all moved for summary judgment. Pass, Care Sheet, and Brothers Fire sought partial summary judgment against the appellants on the grounds that the loss of use and consequential damages were barred as a matter of law, citing John W. Reis, Measure of Damages in Property Loss Cases, 76 Fla. B.J. 32 (Oct. 2002). In their motion for summary judgment, the appellees also argued that A201 applies because there was no evidence that it was intended to be excluded from the contract, and that A201 bars all claims— including consequential damages — against the Contractor and Subcontractors. The Douglas Appellants’ motion for summary judgment argued the A201 provisions did not apply because the testimony proved that A201 was never intended to be a part of the final contract; therefore, the contract should be reformed to reflect the parties’ true intention to exclude A201.[2]
The trial court held a hearing on the pending motions for summary judgment. Thereafter, the trial court issued five orders in the case. All of the orders are summary in nature and do not contain findings of fact or citations to legal authority. The trial court granted Pass’s motion for summary judgment, and denied the Douglas Appellants’ and Zurich’s claim for reformation. The trial court also denied the Douglas Appellants’ motion for summary judgment as it related to their claim for reformation.
The Douglas Appellants and Zurich filed motions for clarification. After a hearing on these motions, the trial court entered final judgment for Pass, Care Sheet, and Brothers. The Douglas Appellants and Zurich now appeal the final judgment, as well as the orders granting the appellees’ motions for summary judgment and denying appellants’ motions for summary judgment.
On appeal, the appellants contend that it was an error to deny their motion for summary judgment on the reformation claim. At the least, they argue, it was an error to grant the appellees’ motions for summary judgment regarding the incorporation of A201 because, appellants contend, there was a genuine issue of material fact regarding whether the parties intended to include A201 as a part of their final written agreement. Further, appellants *508 contend that, assuming A201 does in fact apply in this case, the terms of that document do not preclude their claims for consequential damages, but only claims for damages “to the Work” as defined by A-201.
We have jurisdiction pursuant to Florida Rules of Appellate Procedure 9.110(a)(1) and 9.080(b)(1)(A).
Issues involving summary judgment are reviewed by the appellate court using the de novo standard. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). “Due to the strong presumption that a written agreement accurately expresses the parties’ intent, the party seeking reformation based on a mutual mistake must prove its case by clear and convincing evidence.” BrandsMart U.S.A. of W. Palm Beach, Inc. v. DR Lakes, Inc., 901 So.2d 1004, 1006 (Fla. 4th DCA 2005). However, a trial court may not weigh the evidence or judge the credibility of witnesses in arriving at summary judgment; instead, the moving party must conclusively show the absence of any genuine issues of material fact. Craven v. TRG-Boynton Beach, Ltd., 925 So.2d 476, 480-81 (Fla. 4th DCA 2006).
Where a writing that evidences or embodies an agreement in whole or in part fails to express the agreement because of a mistake of both parties as to the contents or effect of the writing, the court may at the request of a party reform the writing to express the agreement, except to the extent that rights of third parties such as good faith purchasers for value will be unfairly affected.
Restatement (Second) of Contracts § 155 (1981). “A court of equity has the power to reform a written instrument where, due to mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument.” BrandsMart, 901 So.2d at 1005 (quoting USAA Cas. Ins. Co. v. Threadgill, 729 So.2d 476, 478 (Fla. 4th DCA 1999)). “A mistake is mutual when the parties agree to one thing and then, due to either a scrivener’s error or inadvertence, express something different in the written instrument.” Id. at 1005-06 (quoting Circle Mortgage Corp. v. Kline, 645 So.2d 75, 78 (Fla. 4th DCA 1994)). “In an equitable action for reformation of a contract, the plaintiff must prove by clear and convincing evidence that a mutual mistake occurred to overcome the strong presumption that a contract expresses the intent of the parties.” Resort of Indian Spring, Inc. v. Indian Spring Country Club, Inc., 747 So.2d 974, 976-77 (Fla. 4th DCA 1999) (citing Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295, 1297 (Fla. 1st DCA 1982)).
The facts of Indian Spring are analogous to the instant case, and its holding illustrates why summary judgment was improper. In Indian Spring, RIS sought to reform the legal description of property in a deed conveyed to the Club. Id. at 975. The lawyer for the Club, Mr. Wolmer, negotiated the contract on behalf of the Club, which ultimately included “office facilities” as part of the property being transferred to the Club. Id. at 976. Subsequently, RIS discovered that the Executive Office parcel had been included in the legal description of the property conveyed to the Club. Upon discovery, RIS’s attorney obtained a “scrivener’s error affidavit,” and Wolmer also wrote a letter, and testified at trial, that the Club, which he represented at closing, had not intended to receive the Executive Office parcel in the transaction. Id. The issue at trial concerned whether the parties intended to include the Executive Office parcel as part of the conveyance, or whether its inclusion was a mutual *509 mistake resulting from a scrivener’s error. Id.
The evidence at trial included testimony from a Mr. Streem, a board member for the Club, who testified that the Club intended the parcel to be included from the beginning of negotiations through closing. His testimony was contradicted by the Club’s attorney, Wolmer. The trial court ultimately ruled in favor of the Club, denying RIS’s action to reform the contract and exclude the Executive Office parcel. Id.
On appeal, we affirmed the trial court’s decision to deny reformation and held that the “trial court’s factual findings are presumed correct, particularly where there are evidentiary conflicts, and will not be disturbed on appeal unless clearly erroneous.” Id. at 977. We also described the scenario as follows:
In the instant case, what RIS wishes to attribute to the Club was Wolmer’s conclusion, based wpon the lack of particular discussions about the Executive Office parcel, that the Office parcel was not included in the transaction. Nowhere did Wolmer testify that either Club members or RIS representatives specifically told him that the parcel was not included. Thus, RIS wants to bind the Club with a negative inference that the parcel wasn’t included because no one talked about it.
Id. at 977 (emphasis added).
Indian Spring, however, was ultimately decided based on the fact that Wolmer’s testimony was contradicted by Streem. Id. at 977. This court held:
In any event, Wolmer’s conclusion was rebutted. Streem contradicted almost every detail of Wolmer’s testimony. As to the lack of specific discussions about the parcel, Streem explained that he simply assumed that it was included and that he at all times intended it to be part of the transaction.... Certainly, the Club is not bound by factual evidence that it expressly disputes. It is axiomatic that in matters where the trial court is sitting as trier of both fact and law, “matters pertaining to the credibility of witnesses and the weight of the evidence are exclusively within its province.” ... Thus, it was within the trial court’s discretion to accept Streem’s testimony and reject the testimony of Wolmer.
Id. (quoting Davis v. State, 606 So.2d 460, 463 (Fla. 1st DCA1992)).
The instant case is analogous to the scenario in Indian Spring. The appellants contend that, during negotiations between Douglas and Mr. Waskiewicz, the lack of discussions regarding A201 is evidence that the parties never intended to include A201 in the final written agreement. Although both parties to the contract testified that A201 was not discussed, it was nevertheless incorporated by numerous references within the final written document. Furthermore, the President of Pass, Roger Rex, submitted an affidavit, as well as testified that A201 is intended to be incorporated in all Alll-1997 forms (like the one signed by Mr. Douglas and Mr. Waskiewicz on behalf of Plantation Key and Pass, respectively), and that these general conditions “are an essential element to form Alll-1997[.]” Like in Indian Spring, “[the appellants] want to bind [the appellees] with the negative inference that the [A201] wasn’t included because no one talked about it.” See Indian Spring, 747 So.2d at 976 (affirming trial court’s denial of reformation claim).
Also like Indian Spring, there is conflicting testimony regarding whether A201 was intended to be a part of the final contract between Douglas and Pass. At the signing of the written instrument, Pass was represented by Mr. Waskiewicz, a Vice President at Pass. He testified that it *510 was a mistake to include A201. As discussed above, however, the President of Pass submitted an affidavit and also testified that the A201 is intended to be incorporated in all Alll-1997 forms, and that these general conditions “are an essential element to form Alll-1997[.]” Like Indian Spring, “what [the appellants] wish[] to attribute to [Pass] was [Waskiewicz’s] conclusion, based upon the lack of particular discussions about the [A201], that the [A201] was not included in the [Alll-1997].” See Indian Spring, 747 So.2d at 976. As in Indian Spring, however, Waskiewicz’s conclusion was rebutted by the President of Pass’ own testimony and affidavit.
Had this issue been resolved at trial, the trial court would have been free to accept Mr. Rex’s testimony and reject the testimony of Mr. Waskiewicz with regards to whether A201 was intended to be a part of the final written agreement. However, the cause was heard at a hearing on the parties’ motions for summary judgment; and at that stage in the proceedings, the trial court is not permitted to weigh testimony or determine credibility of witnesses. Craven, 925 So.2d at 480-81. Therefore, summary judgment was improper because a genuine issue of material fact existed regarding whether A201 was intended to be a part of the agreement signed by Mr. Douglas and Mr. Waskiewicz. Accordingly, the trial court was correct in denying appellants’ motion for summary judgment seeking reformation, but erred in granting the appellees’ motion on the same issue— whether the inclusion of A201 was due to mutual mistake.
Here, there is record evidence that Plantation Key and Pass had an agreement that predated the written contract, and the parties operated under this original “handshake agreement” for eighteen months before the written contract was hastily developed to satisfy the bank. Further, based on the record, a fact finder could determine that the original agreement did not contemplate the A201 provisions and that these provisions were never intended to be part of the written contract. The fact finder could also find the contrary to be true, based upon the testimony and affidavit of Mr. Rex. This conflicting evidence creates a factual dispute that goes to the core of this case. Such factual disputes cannot be resolved by summary judgment.
Based on the foregoing, we reverse the summary judgment entered in favor of Pass and the Subcontractors because there was a genuine issue of material fact regarding whether the parties intended A201 to be incorporated within their final written agreement. Because we reverse on this threshold matter, we need not determine whether the trial court erred in its application of A201 to the facts of this case. Once the matter of reformation is properly resolved by the trial court, only then may the court properly apply, or not apply, the provisions of A201 to determine the ultimate rights and liabilities of the parties. Accordingly, and on remand, the trial court must now determine — through any proper procedure — whether the A201 should control in this case. Once it makes this determination, only then can the trial court properly determine the ultimate rights and liabilities of the parties.

Reversed and Remanded.

STEVENSON and CIKLIN, JJ., concur.

. The A201 addresses several issues, including claims for consequential damages, purchase of insurance and waivers of subrogation.

. Zurich also filed a cross-motion for partial summary judgment requesting the court grant the claim for reformation. Brothers Fire, also filed a separate motion for summary judgment as to Zurich’s claim for subrogation.