901 So.2d 248 (2005)
FCCI INSURANCE COMPANY, a Florida insurance company f/k/a Florida Construction, Commerce and Industry Self Insurers Fund, a self-insurance fund organized under the laws of Florida; and Florida Employers Insurance Service Corporation, a Florida corporation, Appellants,
v.
CAYCE'S EXCAVATION, INC., Russell Riker, and Porter-Allen Company, Inc., Appellees.
No. 2D03-4594.
District Court of Appeal of Florida, Second District.
April 27, 2005.
*249 David A. Wallace and Morgan R. Bentley of Williams, Parker, Harrison, Dietz & Getzen, Sarasota; and H. George Kagan of Miller, Kagan, Rodriguez & Silver, West Palm Beach, for Appellants.
Jay M. Levy, Miami, for Appellee Cayce's Excavation.
Kenneth R. Drake of DeMahy Labrador & Drake, P.A., Coral Gables, for Appellee Porter-Allen.
No appearance for Appellee Riker.
DAVIS, Judge.
FCCI Insurance Company (FCCI) and the Florida Employers Insurance Service Corporation (FEIS) challenge the final summary judgment entered in favor of Cayce's Excavation, Inc., which required FCCI and FEIS to pay Cayce's the sum of $163,044.46 as reimbursement for benefits paid and for costs and attorney's fees Cayce's incurred when one of its employees was injured. Because the trial court improperly granted summary judgment, we reverse.
Cayce's Excavation, Inc., was involved in seawall and jetty work, septic tank work, and excavation work. In 1989, Cayce's contacted an insurance broker, Porter-Allen, to obtain workers' compensation coverage for its employees. Porter-Allen forwarded Cayce's application to FCCI, an insurer that offered such insurance. In response, FCCI performed a physical inspection or survey of Cayce's business, which led FCCI to issue a policy of workers' *250 compensation coverage to Cayce's, effective February 8, 1990.
However, in a letter dated March 15, 1990, FCCI informed Cayce's that the FCCI policy would not cover any of Cayce's employees who were working on navigable waters because coverage for those workers had to be obtained pursuant to the federal Longshore and Harbor Workers' Compensation Act (LHWCA) and could not be provided by FCCI. Attached to the letter was a document entitled "Longshore and Harbor Workers' Compensation Act Exclusion Endorsement."
Upon receiving the letter, Cayce's contacted its broker, Porter-Allen, to see if additional coverage was required. The broker advised Cayce's that it was properly covered but also contacted FCCI for confirmation. FCCI hired an independent firm to perform a second investigation. Based on the report of the independent company, FCCI concluded that its initial survey was accurate and notified Cayce's of this by letter dated August 3, 1990. This letter became the basis of the dispute underlying this case.
The question of coverage for employees working on navigable waters became an issue when Russell Riker, an employee of Cayce's, was injured on February 6, 1992, while working on a barge installing pilings as part of the construction of a residential dock on a navigable waterway. Riker made a workers' compensation claim for his injuries, but because this work fell under the purview of the LHWCA and was not compensable under the Workers' Compensation Act, FCCI denied the claim. This left Cayce's, which did not have separate LHWCA coverage, to pay Riker his expected benefits, including wages and medical expenses.
Cayce's filed a three-count complaint against FCCI, FEIS, and Porter-Allen, alleging that they were liable for these expenses because they had led Cayce's to believe that it was insured against such liability. Counts one and two sought damages from FCCI and FEIS.[1] Count one was based on the theory of promissory estoppel, and count two was framed as a charge of fraud in the inducement. Count three was a claim of negligence against Porter-Allen. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of Cayce's as to count one. After further hearing, the trial court established damages and entered a final judgment as to liability in favor of Cayce's. The court reserved jurisdiction over Cayce's claim of negligence against Porter-Allen. It is this final judgment that FCCI and FEIS now appeal.[2]
In support of its motion for summary judgment, Cayce's argued that the August 3, 1990, letter it received from FCCI gave assurance to Cayce's that it had all the coverage needed. While recognizing that estoppel would not create LHWCA coverage where FCCI was not authorized to provide such coverage, Cayce's argued that FCCI should be required to reimburse Cayce's for the expenses it incurred due to the lack of LHWCA coverage, which was the result of Cayce's reliance on the assurance of the August 3, 1990, letter.
*251 In response, FCCI argued that its March 15, 1990, letter to Cayce's specifically stated that it did not provide coverage for employees whose work was performed on navigable waters. In fact, that letter clearly advised Cayce's to obtain LHWCA coverage if its employees were involved in such activities. Additionally, FCCI pointed out that it had enclosed with that letter an exclusion endorsement which amended the policy to exclude such coverage. FCCI argued that based on the March 15, 1990, letter, there were no disputed facts as to whether FCCI provided such coverage and summary judgment should be entered in FCCI's favor.
The trial court concluded that it was an undisputed fact that the August 3, 1990, letter was a representation that FCCI covered all the activities of Cayce's employees and that because Cayce's had reasonably relied on that representation, FCCI was estopped from nonpayment on the losses incurred by Cayce's due to Cayce's lack of LHWCA coverage. Thus, the trial court granted summary judgment on the promissory estoppel claim in favor of Cayce's and denied FCCI's motion for summary judgment on the liability issue. We conclude this was error.
To state a cause of action for promissory estoppel, a plaintiff must establish the following three elements: (1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon. Almerico v. RLI Ins. Co., 716 So.2d 774 (Fla.1998). Furthermore, to grant summary judgment, the trial court must find that the moving party has shown conclusively "an absence of any genuine issue of material fact." Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). Thus for the trial court to properly grant summary judgment on promissory estoppel, there must be an absence of disputed fact as to all three elements cited above. That was not the case here.
At the very minimum, the summary judgment must be reversed because the issue of whether the reliance was "reasonable" involves the resolution of factual issues. Whether Cayce's, having been put on notice by the March 15, 1990, letter that there was no coverage, was reasonable in relying on its reading of the August 3, 1990, letter is a determination that should be made by the trier of fact. A summary judgment proceeding is not a substitute for a trial. See Cummins v. Allstate Indem. Co., 732 So.2d 380 (Fla. 4th DCA 1999).
However, we also believe that the summary judgment must be reversed because we disagree with the trial court's finding that, as a matter of law, the August 3, 1990, letter was a representation of coverage by FCCI. The letter was prompted by Cayce's inquiry of the broker as to the need of further coverage. However, the letter stated that Cayce's operations had been properly classified at the earlier inspection. The letter did not specifically state that all of Cayce's operations were covered by the FCCI policy. To the contrary, the August 3, 1990, letter actually underscores the accuracy of the March 15, 1990, letter, which specifically stated that the policy did not provide such coverage and suggested that Cayce's seek such additional coverage. Therefore, the August 3, 1990, letter cannot be read to include an assurance by FCCI that it now provided coverage that had been disclaimed but a few months before.
Because the trial court erred in finding that the August 3, 1990, letter made the required representation of coverage and that there were no issues of fact as to the *252 reasonableness of Cayce's reliance on what it understood to be a representation, the final judgment based on the granting of summary judgment must be reversed and the matter remanded for further proceedings. Additionally, since we have reversed the final judgment, we must also reverse the award of attorneys' fees without further discussion.
Reversed and remanded.
SILBERMAN and KELLY, JJ., Concur.
NOTES
[1] Cayce's complaint alleged that FEIS was the Florida corporation that "administered FCCI and made decisions concerning underwriting and claims payment with regard to FCCI."
[2] We note that although the trial court did not specifically rule on count two, the court's entry of a final judgment of liability in favor of Cayce's and against FCCI and FEIS rendered moot Cayce's claim against FCCI and FEIS for fraud in the inducement.