930 So.2d 643 (2006)
Karem Elena ROMO, individually and as personal representative of the Estate of Magali Romo, Appellant,
v.
AMEDEX INSURANCE COMPANY, Cincinnati Equitable Insurance Company, and Fernando Nava d/b/a F. Nava & Company, Appellees.
No. 3D05-1400.
District Court of Appeal of Florida, Third District.
February 22, 2006.
Rehearing Denied June 27, 2006.
*646 Greenberg Traurig and Charles M. Auslander; Mintz, Truppman, Clein & Higer and Michael J. Higer, Miami, for appellant.
Hunton & Williams and Christopher N. Johnson, Miami, for appellees.
Before GREEN, RAMIREZ, and ROTHENBERG, JJ.
ROTHENBERG, J.
The plaintiff, Karem Elena Romo, etc., appeals from an order dismissing her second amended complaint with prejudice as to defendants Amedex Insurance Company ("Amedex"), Cincinnati Equitable Insurance Company ("Cincinnati Equitable"), and Fernando Nava d/b/a F. Nava & Company ("Nava"). We reverse and remand for further proceedings.

THE COMPLAINT
The plaintiff filed a ten-count Second Amended Complaint ("Complaint") against Amedex, Cincinnati Equitable, Nava, and Humberto Martinez. The Complaint alleges that Amedex is a Florida corporation authorized to sell health insurance products to residents of Mexico, including Magali Romo and her family. Amedex recruited agents, including Martinez and Nava, to sell its health insurance policies, and Amedex supervised these agent relationships. Beginning in 1986, Amedex, which at that time was known as Cincinnati Assurance International Corporation, started to administer, market, and sell health insurance policies on behalf of Cincinnati Equitable. However, in July 1997, Amedex acquired Cincinnati Equitable's policies and began to issue renewal policies under its own name. At all material times, Martinez was Nava's agent; Nava and Martinez were both insurance agents of Amedex and Cincinnati Equitable; and these agents were authorized to transact insurance business on behalf of Amedex and Cincinnati Equitable.
In 1991, Magali Romo and her husband, Jesus Fernandez Romo, Sr. (collectively referred to as "the Romos"), applied for a family health insurance policy through Cincinnati Equitable. In applying for insurance, the Romos were presented with an application for insurance, which was filled out and signed by Mr. Romo.[1] The application contains the following merger clause, which has been translated from Spanish to English:
I understand that no agent is authorized to change or modify in any way these contracts or waive one or some of the requirements [sic] this company, or are they able to bind the company by way of promises, representations or information unless placed in writing and form part of an insurance contract or in favor of this application.
*647 Cincinnati Equitable issued to the Romos an insurance policy, effective February 15, 1991, bearing a policy number of B91-2217-13. This policy provided for liability limits of $2,000,000, a deductible of $500, and coverage for organ transplants. The Romos renewed this policy for numerous years. As to the sale of the initial policy and the subsequent renewals of this policy, Martinez acted as an agent for Nava and Cincinnati Equitable; Nava acted as an agent for Cincinnati Equitable; and Amedex acted as Cincinnati Equitable's sales representative in Florida.
In December 1995, the Romos once again discussed the renewal of the policy with Martinez. He represented to the Romos that they could reduce their insurance premiums and still renew their policy if they would agree to a reduction of the policy limits from $2,000,000 to $1,000,000 and an increase of the deductible from $500 to $1,000. Martinez represented to the Romos that, except for the changes in the policy limit and the deductible, these policies would provide the same coverage and benefits as provided in the prior insurance policies that had been issued to them from 1991 through 1995. In reliance upon Martinez's representations, the Romos purchased the Plan Select Worldwide renewal policy from Cincinnati Equitable and Amedex. Mr. Romo forwarded the premium check and a letter to Amedex which states, as translated, as follows: "THIS IS TO INFORM YOU THAT I WISH TO CHANGE FROM "PLAN B" TO THE NEW PLAN NAMED WORLDWIDE SELECT PLAN ... WITH THE UNDERSTANDING THAT I WILL NOT LOSE SENIORITY, I AM ENCLOSING A CHECK FOR $1,793.00 TO COVER THE ANNUAL CHARGES."
In February 1996, the policy in question was issued under policy number PSW91-2217-13, with the original effective date of February 15, 1991.[2] The Romos did not read this policy to confirm Martinez's representations because they accepted his representations as true.
Following the issuance of the Plan Select Worldwide policy in 1996, Amedex issued subsequent renewals. In 1998, Mrs. Romo became ill and notified Amedex and Cincinnati Equitable that she needed a liver transplant. Initially, Amedex and Cincinnati Equitable advised Mrs. Romo's medical providers that they would provide coverage for the liver transplant; however, shortly thereafter, they advised the medical providers that Mrs. Romo's current policy did not provide coverage for liver transplants. Magali Romo died on September 13, 2002, and Amedex and Cincinnati Equitable have refused to reimburse the Romo family for the medical expenses incurred for the treatment of Mrs. Romo.

MOTION TO DISMISS
Amedex and Cincinnati Equitable filed a motion to dismiss the Complaint, which was joined by Nava, but not Martinez. Based primarily upon the merger clause contained in the 1991 insurance application, the trial court granted the motion to dismiss with prejudice.
The plaintiff contends that the trial court erred by granting the motion to dismiss. We agree.
A trial court's ruling on a motion to dismiss for failure to state a cause of action is an issue of law, thereby mandating de novo review. Roos v. Morrison, 913 So.2d 59 (Fla. 1st DCA 2005); Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc., *648 842 So.2d 204, 206 (Fla. 3d DCA 2003). When ruling on a motion to dismiss for failure to state a cause of action, the trial court must "treat as true all of the . . . complaint's well-pleaded allegations, including those that incorporate attachments, and to look no further than the . . . complaint and its attachments." City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). Moreover, the "reviewing court operates under the same constraints." Id. (quoting Andrews v. Fla. Parole Comm'n, 768 So.2d 1257, 1260 (Fla. 1st DCA 2000)) (citations omitted). As each of the ten counts state a cause of action, we conclude that it was error to dismiss the Complaint.

COUNT I  DECLARATORY JUDGMENT
Count I of the Complaint is an action for declaratory judgment filed pursuant to Chapter 86, Florida Statutes, against defendants Amedex and Cincinnati Equitable. "`A motion to dismiss a complaint for declaratory judgment is not a motion on the merits. Rather, it is a motion only to determine whether the plaintiff is entitled to a declaration of its rights, not to whether it is entitled to a declaration in its favor.'" Royal Selections, Inc. v. Fla. Dep't of Revenue, 687 So.2d 893, 894 (Fla. 4th DCA 1997); see also Smith v. City of Fort Myers, 898 So.2d 1177, 1178 (Fla. 2d DCA 2005)("In determining the sufficiency of a complaint for declaratory judgment, the question is whether the plaintiff is entitled to a declaration of rights, not whether the plaintiff will prevail in obtaining the decree he or she seeks."). To state a cause of action for declaratory relief, a complaint must allege that
there is a bona fide dispute between the parties and that the moving party has a justiciable question as to the existence or non-existence of some right, status, immunity, power or privilege, or as to some fact upon which the existence of such right, status, immunity, power or privilege does or may de[p]end, that plaintiff is in doubt as to the right, status, immunity, power or privilege, and that there is a bona fide, actual, present need for the declaration.
Smith, 898 So.2d 1177, 1178 (Fla. 2d DCA 2005)(quoting Bell v. Associated Indeps., Inc., 143 So.2d 904, 908 (Fla. 2d DCA 1962) (citations omitted)); see Floyd v. Guardian Life Ins. Co., 415 So.2d 103, 105 (Fla. 3d DCA 1982).
In the instant case, the order under review indicates that the trial court did not determine whether the Complaint contains sufficient allegations entitling the plaintiff to a declaration of her rights. Rather, the trial court erroneously treated the motion to dismiss as a motion on the merits by concluding that Amedex and Cincinnati Equitable were not required to provide coverage to Mrs. Romo for an organ transplant because the insurance policy does not provide such coverage.
To determine whether the plaintiff is entitled to a declaration of her rights, we must examine the allegations of the Complaint. The Complaint alleges that the plaintiff is in doubt as to whether Mrs. Romo was entitled to coverage by Amedex and Cincinnati Equitable for a liver transplant; that Amedex and Cincinnati Equitable have refused to provide such coverage; and that there is a present controversy between the plaintiff and Amedex and Cincinnati Equitable as a result of their refusal to provide coverage. The Complaint indicates that the plaintiff is asserting a right to coverage based upon Florida law governing the issuance of renewal policies;[3] *649 the representations made by the agents of Amedex and Cincinnati Equitable; and that, allowing Amedex and Cincinnati Equitable to deny coverage, would allow them to perpetrate a fraud. As these allegations were sufficient to entitle the plaintiff to a declaration of her rights, we reverse the portion of the order dismissing Count I of the Complaint.

COUNT II  REFORMATION and COUNT VIII  BREACH OF CONTRACT
Count II of the Complaint seeks a reformation of the insurance contract to include coverage for organ transplants. To state a cause of action for reformation of a contract, the complaint must allege that, as a result of a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party, the insurance contract fails to express the agreement of the parties. See Kolski v. Kolski, 731 So.2d 169 (Fla. 3d DCA 1999)(holding that allegations of complaint were sufficient to withstand a motion to dismiss where the complaint alleged that writing did not contain the entire agreement of the parties due to a unilateral mistake by one party and the inequitable conduct of the other party); Circle Mtg. Corp. v. Kline, 645 So.2d 75, 78 (Fla. 4th DCA 1994)("The rationale for reformation is that a court sitting in equity does not alter the parties' agreement, but allows the defective instrument to be corrected to reflect the true terms of the agreement the parties actually reached."); Providence Square Assoc. v. Biancardi, 507 So.2d 1366, 1369-72 n. 3 (Fla.1987)(stating that a contract may be reformed due to a mutual mistake or a unilateral mistake by one party coupled with the inequitable conduct of the other party to the agreement); Am. Fire & Indem. Corp. v. State Farm Auto. Ins. Co., 483 So.2d 122, 123 (Fla. 1st DCA 1986)(holding that "contract cannot be reformed in the absence of mutual mistake"); Canal Ins. Co. v. Hartford Ins. Co., 415 So.2d 1295, 1297 (Fla. 1st DCA 1982)(holding that a contract may be reformed based upon a mutual mistake); Samet v. Prudential Ins. Co. of Am., 294 So.2d 35, 36 (Fla. 3d DCA 1974)("For reformation of an insurance contract for fraud or mutual mistake it must be shown that the policy failed to express or conform to the contemplation of the parties, by evidence sufficient to overcome a presumption arising from the policy that it correctly expressed the intention of the parties.").
In the instant case, the count for reformation alleges that the parties to the insurance contract believed that the insurance *650 policy contained coverage for liver transplants, and that the failure of the policy to provide this coverage was as a result of a mutual mistake. The Complaint alleges in the alternative that, if the mistake was not a mutual mistake, it was a unilateral mistake on the part of the Romos, as a result of the inequitable conduct of Amedex and Cincinnati Equitable's agents. Based on these well-pled allegations, we conclude that the Complaint states a cause of action for reformation. Moreover, we note that the merger clause contained in the 1991 application does not automatically bar the plaintiff from seeking the reformation of the insurance contract. See Providence Square, 507 So.2d at 1371 ("In a reformation action in equity,. . . parol evidence is admissible for the purpose of demonstrating that the true intent of the parties was something other than that expressed in the written instrument. Similarly, the doctrine of merger in deed, under which preliminary understandings, negotiations, and agreements regarding a conveyance are held to merge in the deed leaving it as the sole expositor of the parties' intent, is inapplicable in an action seeking the equitable remedy of reformation.") (citations omitted); Noack v. Blue Cross & Blue Shield of Fla., Inc., 742 So.2d 433 (Fla. 1st DCA 1999)(holding that a written contract's merger clause is not a bar to a cause of action for reformation).[4]

COUNT III  PROMISSORY ESTOPPEL
Count III of the Complaint is for promissory estoppel against Amedex and Cincinnati Equitable. To state a cause of action for promissory estoppel, the plaintiff is required to allege three elements: "(1) a representation as to a material fact that is contrary to a later-asserted position; (2) a reasonable reliance on that representation; and (3) a change in position detrimental to the party claiming estoppel caused by the representation and reliance thereon." FCCI Ins. Co. v. Cayce's Excavation, Inc., 901 So.2d 248, 251 (Fla. 2d DCA 2005).
In the instant case, the promissory estoppel count alleges that Amedex and Cincinnati Equitable's representative and agent, Martinez, promised the Romos that the coverage provided in the Plan Worldwide Select renewal policy was the same coverage as provided in their previous policies; that the Romos relied to their detriment on this promise; and that as a result of their reliance on the promise, damages were incurred. Based upon these allegations, we conclude that the Complaint sufficiently pleads a cause of action for promissory estoppel. See Crown Life Ins. Co. v. McBride, 517 So.2d 660 (Fla. 1987)("[T]he form of equitable estoppel known as promissory may be utilized to create insurance coverage where to refuse to do so would sanction fraud or other injustice."); see also Prof'l Underwriters Ins. Co. v. Freytes & Sons Corp., 565 So.2d 900, 902 (Fla. 5th DCA 1990)(holding that doctrine of promissory estoppel can be used to create insurance coverage, but burden is on plaintiff to establish elements of promissory estoppel by clear and convincing evidence).

COUNT IV  FRAUDULENT MISREPRESENTATION and COUNT VI  FRAUD
Count IV of the Complaint is for fraudulent misrepresentation against Amedex, Cincinnati Equitable, Martinez, and Nava. To state a cause of action for fraudulent misrepresentation, a plaintiff is required *651 to allege the following elements in the complaint: (1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages. Biscayne Inv. Group, Ltd. v. Guarantee Mgmt. Servs., Inc., 903 So.2d 251 (Fla. 3d DCA 2005); Elders v. United Methodist Church, 793 So.2d 1038 (Fla. 3d DCA 2001); Chino Elec., Inc. v. United States Fid. Guar. Co., 578 So.2d 320, 322 n. 4 (Fla. 3d DCA 1991).
A review of the Complaint indicates that these elements are alleged. Nonetheless, the appellees argue that the trial court correctly granted the motion to dismiss with prejudice because the merger clause contained in the 1991 insurance application automatically defeats the plaintiff's allegation of reliance. As the issue of whether the Romos reasonably relied upon the misrepresentations of Martinez is an issue of fact, we disagree.
In S & S Air Conditioning Co. v. Freire, 555 So.2d 387 (Fla. 3d DCA 1989), the plaintiffs filed a fourth amended complaint for fraudulent misrepresentation against Freire, who was an insurance agent employed by Dardick General Agency ("Dardick"); Dardick; and Washington National Insurance Company, who was Dardick's "employer." The complaint alleged that Freire proposed a Durham Insurance Company health insurance plan that would cover the employees of S & S. Thereafter, S & S and its employees submitted insurance applications, and S & S tendered a check to Comprehensive Benefits Administrators, Inc. ("CBAI") as a binder for the health insurance plan. Freire represented to S & S that its employees would have full coverage as of a specific date. On that specific date, a child of one of S & S's employees was injured and incurred medical expenses. Upon the employee's demand for payment from CBAI, CBAI returned the check to S & S and denied coverage. The trial court granted a motion to dismiss with prejudice as to Freire, Dardick, and Washington National.
On appeal, this court noted that the application for insurance, established that Freire "acted as an agent for the insured, that Freire had no right to bind coverage, and that insurance would not be effective until Durham or CBAI approved the application." S & S, 555 So.2d at 388. Dardick and Freire argued that these recitals in the insurance application "vitiate the allegations of agency and reasonable reliance on Freire's representations," and therefore, the plaintiffs' claim for fraud was defeated. Id. This court disagreed, finding that the complaint pled a cause of action against Dardick and Freire based upon the complaint's allegation that Freire, as an agent of Dardick, knowingly made misrepresentations of fact and that these misrepresentations were reasonably relied upon to the detriment of the plaintiffs. Id. at 387-88. In reversing as to Dardick and Freire, we specifically held that "[t]he terms of the written application do not preclude an action against the insurer and its agent where the agent misrepresents the coverage of the insurance contract and the insured reasonably relies thereupon to his detriment," id. at 388, and that issues regarding the existence of an agency relationship and reliance on misrepresentation of fact are questions of fact. Id. at 388 n. 1-2. Although we reversed the dismissal as to Dardick and Freire, this court affirmed the dismissal as to Washington National because, while Dardick General Agency was Washington National's Florida agent, Washington National had no authority over or connection with Freire.
*652 In both the instant case and in S & S, the insurance applications state that the agent does not have the authority to bind the insurer. As we concluded in S & S that the complaint stated a cause of action for fraudulent misrepresentation against the agent, Freire, and his employer, Dardick, despite the language contained in the insurance application, we likewise conclude that the Complaint in the instant case states a cause of action for fraudulent misrepresentation against Martinez and his employer, Nava.
Amedex and Cincinnati Equitable argue that, even if we were to conclude that the Complaint states a cause of action as to Martinez and his employer, Nava, based upon our holding in S & S, we must affirm the dismissal as to them. We disagree. Amedex and Cincinnati Equitable correctly note that, in S & S, this court affirmed the dismissal of the insurer, Washington National, even though we concluded that Washington National was "Dardick's employer" and that Washington National had appointed Dardick as its Florida agent. A thorough reading of S & S, however, reveals an important distinction between S & S and the instant case. In S & S, we affirmed the dismissal as to Washington National because there "were no allegations connecting Washington with Freire's misrepresentations." Unlike S & S, the Complaint in the instant case contains numerous allegations connecting Amedex and Cincinnati Equitable with the misrepresentations made by Martinez, who the Complaint alleges is an agent of Nava, Amedex, and Cincinnati Equitable. For example, the Complaint alleges, in part, that the "representations made by Amedex and Cincinnati Equitable's agents and representatives were fraudulent;" "Amedex and Cincinnati Equitable and their agents and representatives knew the representations were false when they made the representations;" and "Amedex and Cincinnati Equitable and their agents and representatives made the false representations with the intent that Plaintiff's mother and father would rely upon these false representations." Based upon the allegations in the Complaint, which if proven, would establish an agency relationship between Martinez and Nava, between Nava and Amedex and Cincinnati Equitable, and between Martinez and Amedex and Cincinnati Equitable directly, coupled with the allegations of the misrepresentations of Martinez (their agent) which were false and which upon the Romos relied to their detriment, we conclude that the Complaint contains sufficient allegations to state a cause of action for fraudulent misrepresentations against Amedex and Cincinnati Equitable. See Mejia v. Jurich, 781 So.2d 1175 (Fla. 3d DCA 2001)("The existence of a merger or integration clause, which purports to make oral agreements not incorporated into the written contract unenforceable, does not affect oral representations which are alleged to have fraudulently induced a person to enter into the agreement."); Martin v. Principal Mut. Life Ins. Co., 557 So.2d 128, 129 (Fla. 3d DCA 1990)(holding that where complaint alleges all elements of a cause of action for fraudulent misrepresentation, the "terms of an insurance policy do not preclude an action against the insurer or its agent where the agent misrepresents the coverage of the insurance contract and the insured reasonably relies on the misrepresentation to his detriment").
The issue of whether the Romos' reliance on the representations allegedly made by Martinez was reasonable, is an issue of fact which may not be resolved at this stage of the proceedings. See FCCI Ins., 901 So.2d at 251 (summary judgment *653 reversed because "whether reliance was `reasonable' involves the resolution of factual issues"); Williams v. Bear Stearns & Co., 725 So.2d 397 (Fla. 5th DCA 1998)(stating that issue of reasonable reliance on fraudulent representation is to be decided by the jury); Thor Bear, Inc. v. Crocker Mizner Park, Inc., 648 So.2d 168 (Fla. 4th DCA 1994)(holding that "determination of reliance is typically left to the trier of fact"). A trier of fact could determine that, based upon what Martinez told the Romos in December of 1995, the Romos reasonably relied upon his misrepresentations, despite the disclaimer contained in the 1991 application.[5]

COUNT V  NEGLIGENT MISREPRESENTATION
Count V of the Complaint is for negligent misrepresentation. To state a cause of action for negligent misrepresentation, a plaintiff must allege that:
(1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted to the plaintiff acting in justifiable reliance upon the misrepresentation.
Simon v. Celebration Co., 883 So.2d 826, 832 (Fla. 5th DCA 2004)(citing Johnson v. Davis, 480 So.2d 625 (Fla.1985)); see Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334, 337-38 (Fla.1997); Ragsdale v. Mount Sinai Med. Ctr. of Miami, 770 So.2d 167, 169 (Fla. 3d DCA 2000).
The Complaint alleges that Martinez and Nava, as agents of Amedex and Cincinnati Equitable, represented to the Romos that, except for the change in the policy limits and the deductible, the "renewal" policy would contain the same coverage as the initial policies; that Amedex and Cincinnati Equitable were aware of these representations; that Martinez "believed that the renewal policy provided coverage for the liver transplant;" and that "as a direct and proximate result of these negligent misrepresentations," injury resulted. Based upon these allegations, we conclude that the Complaint sufficiently pleads a cause of action for negligent misrepresentation against the appellees. See Warren v. Dairyland Ins. Co., 662 So.2d 1387 (Fla. 4th DCA 1995)(holding that insurer can be held liable for the negligent misrepresentations made by insurance agent of insurer; determination of whether insurance agent is agent of insurer "cannot be made at the initial pleading stage").

COUNT X  NEGLIGENCE
Count X of the Complaint is for negligence against the defendants. This Count alleges that Martinez and Nava, who are alleged to be agents of Amedex and Cincinnati Equitable, knew or should have known that the Romos "wanted to purchase a health insurance policy that provided the same coverages that the initial policies sold to them provided;" that Martinez and Nava owed a duty to the Romos to procure such an insurance policy; that Martinez and Nava were negligent in failing to procure such an insurance policy; and as a result of Martinez and Nava's negligence, damages were suffered. As these allegations state a cause of action for negligent procurement of insurance, *654 we also reverse the dismissal of Count X. See Klonis for Use & Benefit of Consol. Am. Ins. Co. v. Armstrong, 436 So.2d 213 (Fla. 1st DCA 1983)("[W]here an insurance agent or broker undertakes to obtain insurance coverage for another person and fails to do so, he may be held liable for resulting damages to that person for breach of contract or negligence."); Bennett v. Berk, 400 So.2d 484, 485 (Fla. 3d DCA 1981)("An insurance broker may be liable for damages where there is an agreement to procure insurance and a negligent failure to do so."); Caplan v. La Chance, 219 So.2d 89 (Fla. 3d DCA 1969)(holding that an insurance agent's negligence in failing to procure the proper insurance coverage requested by the insured is a recognized cause of action).

THE REMAINING COUNTS
We conclude that the remaining counts also state a cause of action, but do not merit discussion.
Accordingly, we reverse the trial court's order dismissing with prejudice the Complaint, and remand for further proceedings.
Reversed and remanded.
NOTES
[1] The application was incorporated by reference into the policy subsequently issued to the Romos in 1991, and was ordered by the trial court to be included as an attachment to the Complaint.
[2] The parties dispute whether the 1996 policy was a renewal policy or a new policy, which we will address later in this opinion.
[3] In the instant case, the plaintiff alleged that the policy at issue was a "renewal" policy. The trial court, however, found that the policy was a "new" policy and that the Romos "chang[ed] to a different policy." Whether the policy was a "renewal" policy, as alleged by the plaintiff, or a "new" policy, is an issue of fact that cannot be resolved on a motion to dismiss. As we have already stated, when ruling on a motion to dismiss, the trial court is required to "treat as true all of the ... complaint's well-pleaded allegations, including those that incorporate attachments, and to look no further than the ... complaint and its attachments." City of Gainesville v. State, Dep't of Transp., 778 So.2d 519, 522 (Fla. 1st DCA 2001). Whether this policy is a renewal policy or a new policy is a key issue of fact, which will directly affect the legal issue presented in this case. For example, if the 1996 policy was a renewal policy, it is arguable that the disclaimer contained in the 1991 insurance application is part of the 1996 policy. However, if the 1996 policy is a new policy, it is arguable that the disclaimer contained in the 1991 application would have no bearing on the 1996 policy. Moreover, the plaintiff has cited to Marchesano v. Nationwide Prop. & Cas. Ins. Co., 506 So.2d 410, 413 (Fla. 1987), which provides that "[a]bsent a notice to the contrary, the insured is entitled to assume that the terms of the renewed policy are the same as those of the original contract."
[4] Count VIII of the Complaint alleges a breach of contract. Based on the allegations asserted in the Complaint and the fact that we have concluded that the Complaint states a cause of action for reformation, we reverse the dismissal of the breach of contract claim.
[5] Based upon our analysis as to the plaintiff's count for fraudulent misrepresentation, we also conclude that the trial court erroneously dismissed Count VI of the Complaint which alleges, in part, that the defendants, who were acting in concert with each other, fraudulently induced them into purchasing the renewal policy.