# Third District Court of Appeal

## State of Florida

Opinion filed March 20, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D23-0559
Lower Tribunal No. 22-3185
_____

**LoanFlight Lending, LLC, et al.,**
Appellants,

vs.

**Gerald A. Wood, et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Charles K. Johnson, Judge.

Anthony & Partners, LLC, John A. Anthony, and Andrew J. Ghekas (Tampa), for appellants.

BergaLaw, PA, Christopher G. Berga, and Joshua Belcher, for appellees.

Before FERNANDEZ, SCALES and MILLER, JJ.

FERNANDEZ, J.

Loanflight Lending, LLC ("Loanflight"), Kayla Rydell, and Amanda Shapiro appeal the trial court's non-final order granting leave to amend the complaint to seek punitive damages. Based on the standard for punitive damages, we affirm in part the order as to Kayla Rydell and reverse in part the order as to Amanda Shapiro and Loanflight.

The underlying case is a foreclosure action brought by Loanflight against Gerald A. Wood and Seida M. Wood ("the Woods"), involving a technical default where Loanflight alleges that the Woods committed fraud by claiming that they would be receiving pension income from Citibank prior to disbursement of the loan issued by Loanflight.[1] Loanflight claims it discovered the alleged fraud when Loanflight attempted to sell the Woods' loan to Chase Bank. Chase, after conducting its own underwriting, discovered that the pension money was not present income. Without the pension income, the debt-to-income ratio ("the DTI") was considered too high. As a result, Chase declined purchase of the loan. Thereafter, Loanflight filed a foreclosure action against the Woods based on the alleged fraud.

The Woods filed an answer and affirmative defenses and filed a countersuit against Loanflight and Loanflight loan processor, Kayla Rydell.

---

[1] Loanflight alleges a technical default as the Woods never missed a loan payment.

In their countersuit, the Woods claimed that Loanflight and Rydell negligently and fraudulently misrepresented key information to convince the Woods to obtain the subject loan. The Woods later filed a motion to amend their complaint to add the underwriter of the loan, Amanda Wert (now, Amanda Shapiro), as a counter-defendant and to add a request for punitive damages against all parties for negligent and fraudulent misrepresentation.

After an extensive hearing on the motion, the trial court granted the Woods' request to amend their counter-complaint, adding Shapiro as a counter-defendant and finding a reasonable basis for punitive damages as to all defendants. Loanflight, Rydell, and Shapiro appeal the non-final order challenging the claim of punitive damages.[2]

I.     Analysis

We have jurisdiction pursuant to Florida Rule of Appellate Procedure 9.130, which allows parties to seek immediate appellate review of non-final orders granting or denying motions for leave to assert claims for punitive damages. The standard of review for "a trial court's order granting or denying a motion to amend to state a claim for punitive damages [is] de novo." <u>Estate of Despain v. Avante Group, Inc.</u>, 900 So. 2d 637, 644 (Fla. 5th DCA 2005).

---

[2] The addition of Shapiro as a counter-defendant was not challenged on appeal and will not be addressed by this Court.

3

Section 768.72, Florida Statutes (2023), provides the basis on which a trial court can permit a claim for punitive damages as follows:

> 1) In any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages. The claimant may move to amend her or his complaint to assert a claim for punitive damages as allowed by the rules of civil procedure. The rules of civil procedure shall be liberally construed so as to allow the claimant discovery of evidence which appears reasonably calculated to lead to admissible evidence on the issue of punitive damages. No discovery of financial worth shall proceed until after the pleading concerning punitive damages is permitted.
>
> 2) A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence. As used in this section, the term:
>
> (a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.
>
> (b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

Of importance is the distinction between the standard for permitting a claim for punitive damages and the standard for a defendant to be held liable for punitive damages. The statute provides that in order for the trial court to permit a claim, the claimant must demonstrate "a reasonable showing by evidence in the record or proffered by the claimant which would provide a

4

reasonable basis for recovery of such damages," while in order to award punitive damages, the trier of fact must find "based on clear and convincing evidence[ ] that the defendant was personally guilty of intentional misconduct or gross negligence." Id.

In the amended complaint, the Woods included a general request for punitive damages and individual requests for punitive damages within the negligent misrepresentation and fraudulent misrepresentation counts for each party. Because punitive damages never stand alone, we review the request for punitive damages in the context of the underlying claims. Keen v. Jennings, 327 So. 3d 435, 438-39 (Fla. 5th DCA 2021) (quoting Soffer v. R.J. Reynolds Tobacco Co., 187 So. 3d 1219, 1221 (Fla. 2016)) ("There is, however, no separate and distinct cause of action for punitive damages. '[R]ather it is auxiliary to, and dependent upon, the existence of an underlying claim.'" (internal citations omitted)).

To state a cause of action for negligent misrepresentation, a plaintiff must allege:

> (1) the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because he should have known the representation was false; (3) the defendant intended to induce the plaintiff to rely . . . on the misrepresentation; and (4) injury resulted in the plaintiff acting in justifiable reliance upon the misrepresentation.

5

<u>Romo v. Amedex Ins. Co.</u>, 930 So. 2d 643, 653 (Fla. 3d DCA 2006) (quoting

<u>Simon v. Celebration Co.</u>, 883 So. 2d 826, 832 (Fla. 5th DCA 2004)). To

state a cause of action for fraudulent misrepresentation, a plaintiff must

allege:

> (1) a misrepresentation of a material fact; (2) which the person making the misrepresentation knew to be false; (3) that the misrepresentation was made with the purpose of inducing another person to rely upon it; (4) that the person relied on the misrepresentation to his detriment; and (5) that this reliance caused damages.

<u>Romo</u>, 930 So. 2d at 650-51.

Turning now to Rydell, Rydell as Loanflight's loan processor was in

direct communication with Mr. Wood prior to the disbursement of the loan.

The Woods claim that on September 12, 2021, Rydell informed them that

there was an issue with the DTI, and to remedy the issue, the Woods needed

to verify cash reserves. Attached to the amended complaint as Exhibit B and

C are the email exchanges between Mr. Wood and Rydell. The

communications reveal that Rydell maintained that the Citibank pension

documentation was to be used for the purpose of cash reserves and not as

an indication of present income. When Rydell first requested the reserves,

she informed Mr. Wood, "[A]gency guidelines require you to have 6 months

reserves which equals out to about $17k. This does not have to be liquid

assets." Mr. Wood stated that he and his wife did not have cash in a bank

6

account that would qualify but stated, "I do have the ability to draw on a pension, which I am deferring at present. **The pension would not be current income**, but potential future income. Would documentation of the pension be sufficient?" (Emphasis added). Rydell responded, "That should be sufficient. Anything [sic] kind of assets with an ending balance of $17K or more should be sufficient." Thereafter, Wood verified with Rydell on multiple occasions that the future pension money was to be used for cash reserves and was not present income. He also restated that he would not be collecting the pension for another 18 months. Rydell continued to affirm this to be the case. At one time, Rydell asked Wood if he had started receiving the pension amount, and if he had, the pension amount would qualify as income, but if he had not received the pension amount, she would need further documentation of the pension for purposes of cash reserves. In reply, Wood once again stated he was not collecting on the pension: "So, the income has not started yet. I intend to start it in about 18 months. I can't start it, then pause it for a while." That same day on September 22, 2021, Mr. Wood emailed Rydell informing her that Citibank would send a confirmation that "will show my name, address, estimated income and estimated lump sum **if** I take the pension next month." (Emphasis added). The Citibank document showed the monthly pension amount and provided that the pension would

7

commence in October 2021, the next month. However, the document also stated that certain steps would need to be taken before the commencement date in order for funds to be released by that date. Though there is a commencement date in the Citibank loan document, Mr. Wood clarified in the previous email that the Woods would not be taking the pension for another 18 months, and "if" they took the pension next month, the stated amount is an estimated lump sum.

Additionally, attached to the amended complaint as Exhibit F is a two-page Slack chat between Rydell and Shapiro. In the exchange, Rydell stated, "[S]tupid [G]erry [W]ood apparently can't find different reserves but he did provide me with this[.]" She then sent a screenshot of the Citibank document. Directly afterward, she asked, "[N]o[,] right[?] [S]ince 10/1 is before his first mortgage payment?" Shapiro responded, "[Y]es that will work[.] . . . you can give him the 4779.22/month[.]"

Contrary to Rydell's communications, the final loan application listed the pension amount as present income. Based on the elements of negligent and fraudulent misrepresentation, "there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." The email exchanges attached to the amended complaint show that Rydell either "made a

8

misrepresentation of material fact that [she] believed to be true but which was in fact false" or she misrepresented the material fact that she "knew to be false." If the former, there is evidence that Rydell "was either negligent in making the statement because [she] should have known the representation was false." If the latter, she "made [the misrepresentation] with the purpose of inducing another person to rely upon it." Though Mr. Wood sent Rydell a Citibank document providing the amount of the pension and disbursement of the loan starting the next month, Wood emphasized that the pension was future income, he was providing the pension for the purpose of cash reserves, and he would not be collecting the pension for another 18 months. Despite these clear statements by Mr. Wood, Rydell submitted the Citibank document to Shapiro under the assumption that the Woods would start collecting the pension the next month, though she knew from Mr. Wood's repeated statements that this was not the case. The timing of receiving the disbursement was critical to the Woods receiving the loan as evidenced in the Slack exchange. Rydell first states, "[S]tupid [G]erry [W]ood apparently can't find different reserves but he did provide me with this[.]" She then sent a screenshot of the Citibank document. Afterward, she asks: "[N]o[,] right[?] [S]ince 10/1 is before his first mortgage payment?" Rydell submitted the Citibank document to Shapiro along with the date disbursement would

9

commence on October 1st, which would have been the next month "before his first mortgage payment." Without the context that Mr. Wood submitted the document to show what the estimated lump sum would be **if** he started collecting the pension the next month and his stated intention that he would not be collected the pension for another 18 months, Shapiro approved of the loan.

Considering the evidence of the email and Slack exchanges attached to the amended complaint, we find that there is a reasonable showing of evidence that provides a reasonable basis for recovery of punitive damages as to Rydell. Therefore, the trial court did not err in permitting a claim for punitive damages as to Rydell.

As to Shapiro, we do not find a reasonable showing of evidence of intentional misconduct regarding the negligent and fraudulent misrepresentation counts. Shapiro, as underwriter of the loan, did not directly communicate with the Woods. The Woods argue that Shapiro made misrepresentations through Rydell but fail to explain a basis for vicarious liability. Therefore, the Woods did not make a reasonable showing of evidence that provides a reasonable basis for recovery of punitive damages as to Shapiro. Accordingly, the trial court erred in permitting a claim for punitive damages as to Shapiro.

With respect to Loanflight, the Woods allege vicarious liability for negligent and fraudulent misrepresentations "through its employees, loan processors and/or representatives."[3] According to the statute, punitive damages may be imposed on an employer for the conduct of an employee in the case of the following:

> (3)  In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:
> (a)  The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;
> (b)  The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or
> (c)  The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss, damages, or injury suffered by the claimant.

§ 768.72, Fla. Stat. (2023).

The Woods claim that Loanflight showed that it "knowingly condoned, ratified, or consented to [Rydell's] conduct" through its corporate policies and by bringing this foreclosure action against the Woods. However, there is no nexus between initiation of the foreclosure action by Loanflight and a conclusion that Loanflight actively participated in Rydell's conduct, nor is

---

[3] The Woods likewise allege Loanflight's direct liability, though the alleged actions do not qualify as miscommunications.

11

there a showing that Loanflight knowingly condoned, ratified, or consented to Rydell's conduct. We therefore conclude that there is no reasonable showing of evidence in the record that provides a reasonable basis for recovery of punitive damages as to Loanflight.[4]

For the reasons stated, we affirm in part the non-final order granting leave to amend the complaint to add punitive damages as to Rydell and reverse in part the order as to Loanflight and Shapiro as to the issue of punitive damages only.

Affirmed in part; reversed in part and remanded.

---

[4] If anything, Loanflight relied on Rydell's representation of Wood's income to fund the loan.